Warólaw J.
delivered the opinion of the Court.
This action is novel in the instance, but that is no objection *546 to it, if it be not new in principle. The law endures no injury, from which damage has ensued, without some remedy; but directs the application of principles already established, to every new combination of circumstances that may be presented for decision.
it has however, been urged hero again, as it was on the circuit, that admitting every thing which the plaintiff has alleged, he has presented either a case of damage without legal injury, or a case of injury without legal damage.
First. Damage without injury. It is said, that the act of selling or giving whiskey to the slave, Bob, was not in itself a wrong to the plaintiff, but was only a violation of a penal statute, which has imposed upon such acts penalties, to be recovered by indictment; and that, therefore, no action by the plaintiff lies, nor any remedy buttheindictment prescribed by the statute.
The wrong, for which an action of trespass on the case lies, may be either an unlawful act, or a lawful act done under circumstances which render it wrongful—any act done or omitted, contrary to the general obligation of the law, or the particular rights and duties of the parties. It might not bo difficult to distinguish between the selling, or giving of spirituous liquor to a slave, and the fair selling to a slave of an article, which could not be expected to produce harm; and to show that, independent of any express statutory prohibition, the former act is so contrary to the rights of the master, and to the duties imposed upon other persons in a slave-holding community, that the person who does it without special matter of excuse, subjects himself to liability for all the legal damage, that may thence ensue; in like manner, as if he had carelessly or wantonly placed noxious food within the reach of domestic animals. But this case may be rested where the plaintiff left it. Our statutes, time after time, have subjected him, who sells to a slave any article without license, to fine and imprisonment upon his conviction after indictment; and the last statute on the subject provides especially, for the punishment, upon conviction after indictment, of him, who sells or gives spirituous liquor to a slave. No express prohibition is contained in either of the statutes, but the penalties necessarily imply a prohibition, and make the *547 thing prohibited, unlawful; (10 Co., 75.) For the injury to the public, the only remedy is that provided by the statute—indictment; but as in case of a nuisance to the whole community, if any person has suffered a particular damage beyond that suffered by the public, he may maintain an action in respect thereof, (2 Ld. Ray, 085); so in case of a misdemeanor punishable by statute, a party grieved is entitled to his action, for the particular damage done to him by reason of the unlawful act.
Second. We come then to the main ground assumed in the defence—that no legal damage followed the injury, but that which was shown was too remote—not such a consequence of the injury as the law will notice.
It would be vain to attempt to define w'ith precision, the terms which have been used on this subject, or to lay down any general rules, by which consequences that shall be answered for, and those which arc too remote for consideration, may be always distinguished. But we will endeavor, without dwelling on particulur cases, to deduce from the general course of decision on this point, so much as may show that the instructions given, were sufficiently favorable for the defendant, and that verdict is conformable to law.
We are troubled here with no distinctions between loss sustained and gain prevented; nor with any between cases, which have been aggravated by evil motive, and those which have not been: for the plahitiff here has claimed only compensation for his actual loss; and the defendant may be regard^ as the jury were instructed to regard him—that is, as one who, with no particular evil purpose, or ill-will towards master or slave, has violated the law only for his own gain.
A distinction, however, is to be observed between cases where the damage ensues, whilst the injurious act is continued in operation and force, and those where the damage follows, after the act has ceased. In the former class, were the cases of Wright & Gray, (2 Bay. 464,) and all the cases which have been cited, or supposed, of slaves put without permission of the owners on racc-horscs, in steam-boats, or on rail-roads—those of property injured during a deviation from the course which was prescribed concerning it, (6 Bing., 716;) and in general all, *548 where unexpected damage was done, whilst an unauthorized interference with another’s rights lasted. Here it is usually of small moment to inquire, whether the damage was the natural consequence of the injury, because the immediate connexion between the wrongful act, and the damage sustained, shows that the damage, however extraordinary, has actually resulted directly from the injury. But in the latter class, to which the case before us must be assigned, the connexion is not immediate between the injury and the consequences; and it becomes indispensable to discriminate in some way, between the various consequences that in some sense, may be said to proceed from the act, for all of them cannot constitute legal damage.
X Every incident will, when carefully examined, be found to be the result of combined causes, and to be itself one of various causes which produce other events. Accident or design may disturb the ordinary action of causes, and produce unlooked for results. It is easy to imagine some act of trivial misconduct or slight negligence, which shall do no direct harm, but set in motion some second agent that shall move a third, and so on, until the most diastrous consequences shall ensue. The ijrst wrongdoer, unfortunate rather than seriously blamcable, cannot X be made answerable for all of these consequences. He shall, *" “not answer for those, which the party grieved has contributed by his own blameable negligence or wrong, to produce, or for any which such party, by proper diligence, might have pre-ventedJJ (Com. Dig. action on the case, 134; 11 East., 60; 2 Taunt., 314; 7 Pick., 284.) But this is a very insufficient restriction; outside of it would often be found a long chain of consequence upon consequence. Only the proximate consequence shall be answered for. (2 Greenleaf Ev., 210, and cases there cited.) The difficulty is to determine what shall come within this designation. The next consequence only is not meant, whether we intend thereby the direct and immediate result of the injurious act, or the first consequence of that result. What either of these would be pronounced to be, would often depend upon the power of the microscope, with which we should regard the affair. Various cases shew that in search of the proximate consequences, the chain has been *549 followed for a considerable distance, but not without limit, or to a remote point. (8 Taunt., 535; Peak’s cases, 205.) { Such X nearness in the order of events, and closeness in the relation of cause and effect, must subsist, that the influence of the injurious act, may predominate over that of other causes, and shall concur to produce the consequence, or may be traced in those causes. To a sound judgment must be left each particular X case. The connexion is usually enfeebled, and the influence of the injurious act controlled, where the wrongful act of a third person intervenes, and where any new agent, introduced by accident or design, becomes more powerful in producing the consequence, than the first injurious act. (8 East., 1; 1 Esp., 48.) It is, therefore, required that the consequences to be answered 1 for, should be natural as well as proximate. (7 Bing., 211; 5 B. & Ad., 645.) By this, I understand, not that they should be such, as upon a calculation of chances, would be found likely to occur, nor such as extreme prudence might anticipate, but only, that they should be such, as have actually ensued one from another, without the occurrence of any such extraordinary conjuncture of circumstances, or the intervention of any such extraordinary result, as that the usual course of nature should seem to have been departed from. In requiring concurring consequences, that they should be proximate and natural to constitute legal damage, it seems that in proportion as one quality is strong, may the other be dispensed with: that which is immediate( cannot be considered unnatural; that which is reasonably to be expected, will be regarded, although it may be considerably removed. (20 Wend., 223.)
It has been supposed, in argument, that without any of these distinctions, it is always sufficient, to inquire only, whether the consequences have certainly proceeded from the injurious act: but it will be seen, that in settling what have certainly proceeded from the act, we will be obliged to determine what are natural and proximate, unless we mean to run to absurd extremes.
In the case before us, the defendant has insisted, that the damage resulted, not so much from his act, as from the acts of the slave, who was a moral being, and a free agent. (4 M’Cord, *550 223.) In cases where damage has been done, during the continuance of a wrongful interference with a slave, it was considered of no consequence, that the slave was a free agent: (2 Rich., 613.; Id., 455; 9 La. Rep., 213;) for there the consent of the slave could not justify the interference, and even the wilful act of the slave producing the damage, was like any other improbable misfortune, which might have occurred, whilst the wrongful act was in operation. But in cases like this, the will of a slave may well interrupt the natural consequences of a wrongdoer's act, and produce consequences, for which he should not answer. Selling whiskey to a slave is no more unlawful, than selling to a slave any other article, without license. And if a rope, sold to a slave, without license and without suspicion of mischief, should be employed by the slave to hang himself the prominent ground of distinction between that case and the present one, would depend upon the will of the slave. If it should be said that the slave would have got a rope elsewhere, or would have taken some other means of self-destruction, it might be answered that if this defendant had not sold the whiskey, Bob would have got it, or some other means of intoxication, elsewhere. But where the mischievous purpose of a slave is manifest, or should be foreseen by ordinary prudence, the injurious act embraces the will of the slave, as one of its ingredients;—the wrong consists, in part, in ministering to the purpose, and natural consequences of that purpose, (although the purpose may have been carried to an extent not anticipated, or the consequences may have been altogether undesigned and unusual.) are the legal consequences of the injurious act. Therefore, it was well left to the jury, to decide whether the drinking and intoxication of Bob, were the natural and probable consequences of selling liquor to him. If fault be found with the instructions given on this head, it is that they were too favorable to the defendant, in requiring, that the consequences should be found to be probable as well as natural. For proximate and natural consequences, not controlled by the unforsecn agency of a moral being, capable of discretion, and left free to choose, or by some unconnected cause of greater influence, a wrongdoer must generally answer, how *551 ever small was the probability of their occurrence. In many instances, the will of a slave, as a controlling cause, would be found as feeble as was the will of a child, that received damage from a cart left carelessly in the street, which he unlawfully attempted to drive. (1 Adol. & El., N. S., 28.) Often the intervention of a third person’s will, influenced by the injurious act, has no effect in rendering consequences too remote. (1 Ad. & El., 43; 2 C. Mer. & Rose., 707.)
The defendant, however, has further insisted, that if the drinking and intoxication were the proximate and natural consequences of his act, the exposure and death were not: but that the death resulted mainly from the exposure, and not from the intoxication only. It may well be said, (speaking in the language of every day life, which attempls no philosophical analysis,) that the exposure was the immediate effect of the intoxication, and that the two produced the death. Thus, without any unconnected influence to be perceived, the death has come from the intoxication, which the defendant’s act occasioned. The defendant cannot complain that an agent, which his own act naturally brought into operation, has occurred to produce the result. The proximity in order of events, and intimacy of relation as cause and effect, between the injurious act and the damage, are as great here as in various cases which have been cited. (17 Pick. 78; 3 Scott New R., 386; 17 Wend. 71; 9 Wend. 325; 11 East, 571; find the cases before cited.)
The jury have decided the facts, and this Court is of opinion that under the inferences, which must be drawn from the finding, the verdict is free from the objection, that the damages were too remote.
The instructions concerning a delivery to Bass, as an instrument of Bob, are approved.
The motion is dismissed.
Withers J. having been of Counsel in this cause, gave no opinion.