498 So.2d 346 (1986)
Catherine Oakes CUEVAS
v.
The ROYAL D'IBERVILLE HOTEL, et al.
No. 55469.
Supreme Court of Mississippi.
November 12, 1986.
Robert O. Homes, Jr., Gulfport, for appellant.
David B. Strain, Bryant, Stennis & Colingo, Gulfport, Charles Pringle, Biloxi, for appellee.
En Banc.
ROY NOBLE LEE, Presiding Justice, for the Court:
Catherine Oakes Cuevas appeals from a judgment entered in the Circuit Court of the Second Judicial District of Harrison County, Mississippi, dismissing her complaint against the Royal D'Iberville Hotel, which sought damages for personal injuries sustained when she fell over a rail at the *347 hotel. The complaint alleged that the Royal D'Iberville Hotel furnished her alcoholic beverages at a time when she was visibly intoxicated in violation of Mississippi Code Annotated § 67-1-83(1) (1972).
Appellant was injured November 12, 1981, when she fell while attending a medical technician's convention. She fell over a railing, which was approximately eight (8) inches lower than the minimum height as required by standard building codes, thirty (30) feet to the lobby floor, sustaining serious injuries. Immediately prior to the accident, appellant had been drinking intoxicants in the hotel lounge with several other medical technicians. Appellant contends that she was visibly intoxicated; that she was served alcoholic beverages in the lounge; that her inebriated condition caused or contributed to the fall and injuries; and that appellee was negligent and liable because of violating § 67-1-83(1), supra.
The question presented for decision by this Court is whether or not the lower court erred in dismissing the appellant's suit on motion for summary judgment, specifically whether or not appellee was liable to appellant for selling and furnishing her intoxicants in violation of § 67-1-83(1), if the intoxication proximately caused or contributed to appellee's injury.
Section 67-1-83(1) provides the following, in part:
(1) It shall be unlawful for any permittee or other person to sell or furnish any alcoholic beverage to any person who is known to be insane or mentally defective, or to any person who is visibly intoxicated, or to any person who is known to habitually drink alcoholic beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit forming drugs... .
Subsection (4) further provides that any person who violated any of the provisions of the statute shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than five hundred dollars ($500.00), or by imprisonment in the county jail for a term of not more than six (6) months, or both such fine and imprisonment, in the discretion of the court. In addition, the Commission was required to revoke the permit of any permittee who violates the provisions of the section.
In W. Prosser, The Law of Torts § 36 (4th ed. 1971), Professor Prosser made the following general comments on legislation similar to our statute:
It is not every provision of a criminal statute or ordinance which will be adopted by the court in a civil action for negligence, as the standard of conduct of a reasonable man. Otherwise stated, there are statutes which are considered to create no duty of conduct toward the plaintiff, and to afford no basis for the creation of such a duty by the court. The courts have been careful not to exceed the purpose which they attribute to the legislature.
* * * * * *
In many cases the evident policy of the legislature is to protect only a limited class of individuals. If so, the plaintiff must bring himself within that class in order to maintain an action based on the statute.
* * * * * *
The class of persons to be protected may of course be a broad one, extending to all those likely to be injured by the violation. Thus a statute ... must clearly be intended for the benefit of any member of the public who may be injured by the act or thing prohibited... .
* * * * * *
The same limitation of the effect of the statute to accomplish only the supposed policy of the legislature is found in the requirement that the harm suffered must be of the kind which the statute was intended, in general, to prevent.
* * * * * *
If the statute is not construed to cover the plaintiff, or the particular type of harm, many courts have held that its *348 violation is not even evidence of negligence, and can have no effect on liability at all.
W. Prosser, The Law of Torts, at 192, 194-95, 201. See also Haver v. Hinson, 385 So.2d 605, 608 (Miss. 1980); Robertson v. Yazoo and M.V.R.R. Co., 154 Miss. 182, 122 So. 371 (1929); U-Haul Co. v. White, 232 So.2d 705, 708 (Miss. 1970).
Mississippi statutes relating to the sale of alcoholic beverages have sometimes been referred to as the Mississippi Dram Shop Law. Such references are misleading because true dram shop acts are civil liability acts wherein the legislature specifically imposed liability on the seller of intoxicating liquors when a third party is injured as a result of the intoxication of the buyer where the sale caused or contributed to such intoxication.[1]
This Court has addressed previously similar questions involving the statutes, and third-party claimants. In Munford, Inc. v. Peterson, 368 So.2d 213 (Miss. 1979), suit was brought to recover for the death of the plaintiff's decedent, Scott Peterson, who was killed in an automobile accident when the minor driver of the vehicle lost control. That driver, Tommy Blankenship, was intoxicated at the time of the fatal accident as a result of consuming beer sold to him by Munford's employees. The case held that Mississippi Code Annotated § 67-3-53(b) (1972), which prohibits the sale of beer or wine to a minor, was adopted for the protection of the general public, including persons such as the decedent Peterson. The Court also held that Munford was guilty of negligence per se in selling the alcoholic beverages to the minors, and, if such negligence proximately caused or contributed to the injury and death of Peterson, the plaintiffs were entitled to recover. The general public was held to be a protected class and decedent Peterson, a minor, was a member of that protected class.
Boutwell v. Sullivan, 469 So.2d 526 (Miss. 1985), involved an action by a third-party complainant against a social host for the death of the complainant's decedent alleged to have been caused by the intoxication of the operator of an automobile, whose host had supplied him with beer. There, the host was held not to be liable because he was not covered by the statute and, under the common law, no liability was imposed. 469 So.2d at 528; City of Jackson v. Wallace, 189 Miss. 252, 196 So. 223 (1940).
We now reiterate our holding in Munford, Inc. v. Peterson, supra, that the Mississippi law, which prohibits the sale of beer or wine to a minor, was adopted for the protection of the general public and that Peterson, a minor, was a member of that protected class. Society has a greater interest in protecting the welfare of minors than other groups listed in § 67-3-53(b), § 67-1-81 and § 67-1-83. Minors comprise a larger segment of society than do the others listed. The future of society is dependent upon the welfare and protection of its youth. Minority is easily determined by the dispenser of intoxicants, e.g., an ID can be required. We hold that the public, e.g., a third-party class whether minor or adult, is protected under the statute from the negligent acts of an intoxicated person, and has a claim against a person or business furnishing alcoholic beverages in violation of the statute. However, we do not think the legislature intended to impose liability upon a dispenser of intoxicants to an adult individual, such as appellant here, who voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself.[2] We further hold that such a person as appellant is excluded from *349 the protected class as articulated in Munford, Inc. v. Peterson, supra.[3]
The judgment of the lower court is affirmed.
AFFIRMED.
WALKER, C.J., HAWKINS, P.J., and ANDERSON, J., concur.
DAN M. LEE, ROBERTSON, PRATHER and SULLIVAN, JJ., dissent.
GRIFFIN, J., not participating.
DAN M. LEE, Justice, dissenting:
Catherine Cuevas filed suit in the Circuit Court of the Second Judicial District of Harrison County, Mississippi, seeking to recover damages for injuries she sustained when she fell over a rail at the Royal D'Iberville Hotel on November 12, 1981. Cuevas originally alleged that the hotel was liable on two grounds: (1) by maintaining a substandard, low rail; and, (2) by furnishing her with alcoholic beverages at a time when she was visibly intoxicated, thereby violating Miss. Code Ann. § 67-1-83(1) (Supp. 1985). A settlement was reached with respect to the claim based on the low rail. At the motion of the defendants, the trial judge granted summary judgment with respect to the second issue and  relying on the case of Munford, Inc. v. Peterson, 368 So.2d 213 (Miss. 1979)  noted that the law in Mississippi does not allow an action against a tavern operator for damages sustained by a person who has voluntarily consumed intoxicating liquors and is subsequently injured as a result of his or her intoxication.
From that judgment, Cuevas appeals and asserts the following:
(1) One who sells intoxicants in violation of the Mississippi Dram Shop law is liable to the consumer thereof if the intoxication proximately causes injury to the consumer. (2) The circuit court erred in dismissing the plaintiff's claim on a motion for summary judgment.

I.
On November 12, 1981, Catherine Cuevas was injured when she fell over a railing at the Royal D'Iberville Hotel in Biloxi; she was attending a medical technician's convention. The accident was occasioned, in part, by the fact that the railing was more than eight inches lower than the minimum height required by building codes and, in part, by the additional fact that Cuevas was intoxicated at the time. Cuevas claims that, as a combined result of her intoxication and the low railing, she fell approximately thirty (30) feet onto the hotel floor.
Immediately prior to the mishap, Cuevas had been drinking in the hotel lounge with several others attending the convention. Although it is undisputed that Cuevas was intoxicated, there was some question whether she was "visibly" intoxicated when she was served in the hotel lounge.

II.
Is one who sells intoxicants in violation of Miss. Code Ann. § 67-1-83(1) liable to the consumer thereof if the intoxication proximately causes injury to that consumer?

A.
This appeal is based on the provisions of Miss. Code Ann. § 67-1-83(1), as amended. References to this statute as "Mississippi's Dram Shop Law" are misleading; typically Dram Shop acts are civil liability acts, legislative creations which specifically "impose liability on the seller of intoxicating liquors (which may or may not include beer), when a third party is injured as a result of the intoxication of the buyer where the sale has caused or contributed to such intoxication." Black's Law Dictionary 444 (5th Ed. 1979); see also, W. Statsky, Legal Thesaurus/Dictionary 259 (1985). Section 67-1-83 proscribes certain sales and delineates the penalty for violation of those proscriptions. Such a statute may be employed to establish the standard of care in a civil action based on a negligence per *350 se theory; however, § 67-1-83 is itself totally void of any reference to civil liability.

B.
The doctrine of negligence per se holds that even though a statute may not expressly provide civil liability for its violation, if a breach occurs in the proper circumstances, courts may give added emphasis to the legislative policies which prompted passage of the statute by declaring that one who violates its provisions is per se negligent. There is no need to prove that the putative tort feasor maintained an actual lack of reasonable care; the statute is itself deemed a conclusive expression of the applicable standard of reasonable conduct. Byrd v. McGill, 478 So.2d 302, 304-305 (Miss. 1985); Daniels v. Adkins Protective Service, Inc., 247 So.2d 710 (Miss. 1971); Teche Lines, Inc. v. Bateman, 162 Miss. 404, 139 So. 159 (1932); W. Prosser, The Law of Torts § 36 (4th ed. 1971).
Two points bear emphasis: the deferential manner in which courts apply such statutes; and, the fact that negligence per se is only available if a breach occurs in the proper circumstances. Both are addressed by Dean Prosser.
With respect to deference, Prosser notes: Much ingenuity has been expended in the effort to explain why criminal legislation should result in the rule for civil liability. If there is a specific provision in the statute to that effect, there is of course no difficulty, since it is clear that that is the intent of the legislature... . But where the statute merely declares that conduct is a crime, and makes no mention of any civil remedy, justification becomes more difficult, since the court is then obviously under no compulsion to apply the statute.
* * * * * *
[T]he most satisfactory explanation is that the courts are seeking ... to further the ultimate policy for the protection of individuals which they find underlying the statute, and which they believe the legislature must have had in mind. The statutory standard of conduct is simply adopted voluntarily, out of deference and respect for the legislature.
W. Prosser, The Law of Torts, 191-192 (4th Ed. 1971).
Subsequently, Prosser addresses the appropriate application of statutory standards:
In many cases the evident policy of the legislature is to protect only a limited class of individuals. If so, the plaintiff must bring himself within that class in order to maintain an action based on the statute.
* * * * * *
The class of persons to be protected may of course be a broad one, extending to all those likely to be injured by the violation. Thus a statute ... must clearly be intended for the benefit of any member of the public who may be injured by the act or thing prohibited... .
* * * * * *
The same limitation of the effect of the statute to accomplish only the supposed policy of the legislature is found in the requirement that the harm suffered must be of the kind which the statute was intended, in general, to prevent.
Id. at 194-195.
Prosser's observations are reflective of Mississippi jurisprudence; this Court has held that violation of a statute constitutes negligence per se only where the plaintiff is a member of the class sought to be protected by the statute, and the resultant harm is of the type sought to be prevented by the passage of the statute. See, Byrd v. McGill, 478 So.2d at 305; Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 707 (Miss. 1984); Haver v. Hinson, 385 So.2d 605, 608 (Miss. 1980); U-Haul Co. v. White, 232 So.2d 705, 708 (Miss. 1970).

C.
In Munford, Inc. v. Peterson, 368 So.2d 213 (Miss. 1979), the principle fundament upon which summary judgment was grounded, suit was brought to recover for the death of the plaintiff's decedent, Scott *351 Peterson, who was killed in an automobile accident when the driver of the vehicle lost control. The minor driver, Tommy Blankenship, was intoxicated at the time of the fatal accident as a result of consuming beer sold to him by Munford's employees. This Court held that Miss. Code Ann. § 67-3-53(b) (1972), which prohibits the sale of beer or wine to a minor, was adopted, in part, for the protection of the general public, including persons such as the decedent. It was also held that the plaintiffs were entitled to an instruction that the defendants, who admitted violating the statute, were negligent per se, and that if the negligence proximately caused or contributed to the injury, then the plaintiffs were entitled to recover.
In Munford, the facts were sufficient to raise a jury question as to whether there was a causal connection between the driver's incompetence (a result of drinking the beer) and the fatal accident. However, in view of evidence that the decedent was himself negligent, this Court concluded that the trial judge erred in precluding the jury from applying the law of comparative negligence, and therefore reversed judgment for the plaintiffs and remanded the case.
Obviously, Munford is only tangentially related to the present case: it involves employment of a different statute,[1] and, as will be seen, an entirely different class of protected persons; rather than the general public, this case involves only the narrow class of persons visibly intoxicated at the time they are served additional intoxicants.

D.
The statute upon which appellant Cuevas relies is § 67-1-83(1) which states, in part:
It shall be unlawful for any permittee or other person to sell or furnish any alcoholic beverage to any person who is known to be insane or mentally defective, or to any person who is visibly intoxicated, or to any person who is known to habitually drink alcoholic beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit forming drugs. (emphasis added)
This section is part of Chapter 1, Title 67 of Mississippi Code Annotated (1972) which regulates the sale of alcoholic beverages within our state under a system of local option.
The purpose and intent of this chapter is to vigorously enforce the prohibition laws throughout the state, except in those counties voting themselves out from under the prohibition laws ... and, in those counties, to require strict regulation and supervision of the manufacture, sale, distribution, possession and transportation of intoxicating liquor.

...
(Emphasis added) Miss. Code Ann. § 67-1-3 (1972). We are of the opinion that such strict regulation and supervision of the sale of intoxicating beverages was legislatively mandated, at least in part, for the protection of those persons who happen to be members of the classes enumerated and described in § 67-1-83(1). A drunken person is as much entitled to protection as a sober one, and much more in need of it. Ramsey v. Anctil, 106 N.H. 375, 377, 211 A.2d 900, 901 (1965). We are likewise of the opinion that the chapter was enacted to protect against any and all harms which proximately result from acts in violation of the statute in question.[2]

*352 E.
Although this is a case of first impression in this jurisdiction, other states have faced similar situations. See, Annot. 98 ALR 3d 1230 § 9 (1980).
In Majors v. Brodhead Hotel, 416 Pa. 265, 205 A.2d 873 (1965), the Pennsylvania Supreme Court decided a case on facts similar to those of the instant case. At approximately 10:00 o'clock p.m. on March 10, 1962, plaintiff, who was sober at that time, went to a ballroom on the sixth floor of defendant's hotel to attend a dance. Hotel employees sold alcoholic beverages directly to the persons attending the dance. By 2:00 o'clock a.m. plaintiff had become exceedingly inebriated. At about that time plaintiff, who was causing a comotion in the men's bathroom, was confined there for the purpose of keeping him out of trouble while other patrons were leaving. Thereupon, plaintiff crawled through a window in the bathroom, eventually out onto a ledge and, from there, fell or jumped some 45 feet onto the roof of defendant's kitchen below and was injured.
Plaintiff's case was successfully tried upon the theory that defendant's liability rested upon the serving of liquor to the plaintiff while he was visibly intoxicated, a violation of the Pennsylvania statute analogous to Section 67-1-83(1) Miss. Code Ann. Appeal was grounded on the lower court's refusal to instruct the jury on contributory negligence and the asserted lack of proximate cause between defendant's conduct and plaintiff's injuries.
The Pennsylvania Supreme Court held that the statutory provision was, in part,
Intended to protect the interest of another as an individual. Also, the interest of the plaintiff which was invaded here was one which the act intended to protect. Accordingly, in cases such as this, we have held that a violation of this statute is negligence per se and, if the violation was the proximate cause of plaintiff's injury, defendant is liable for it.
416 Pa. at 268, 205 A.2d at 875-876. The court went on to explain why contributory negligence was no bar to recovery and that the jury had been adequately charged on the general requirement of finding proximate cause.
In a 1981 Massachusetts case, a consumer of intoxicants brought an action against the owner of a restaurant seeking to recover damages for personal injuries sustained when he, the consumer, fell off the bar in the restaurant. The trial court granted the defendant's motion for summary judgment and the plaintiff appealed. On appeal the trial court's judgment was reversed; it was held that the Massachusetts statute prohibiting the sale or delivery of alcoholic beverages on a licensed premises to an intoxicated person was intended to safeguard persons *353 such as the plaintiff. The court emphasized the following:
The statute ... was undoubtedly enacted with a purpose to safeguard ... the intoxicated person himself... . The legislative policy, being clear, is not to be rendered futile of practical accomplishment... . Nor is the statute to be nullified by an inflexible adherence to the theory that the drinker alone is responsible, regardless of how intoxicated he may be when a bartender repeatedly serves him. (citations omitted) ... [W]hen alcoholic beverages are sold by a tavern keeper, . .. to an intoxicated person, the unreasonable risk of harm ... to ... the intoxicated person may readily be recognized and foreseen... .
O'Hanley v. Ninety-Nine, Inc., 12 Mass. App. 64, 66-67, 421 N.E.2d 1217, 1219 (1981).
In Selchert v. Lien, 371 N.W.2d 791 (S.D. 1985), employees of a liquor licensee knowingly served one Virgil Selchert intoxicants after he was highly intoxicated. This was in violation of statute:
SDCL § 35-4-78 provides:
No licensee shall sell any alcoholic beverage, ...:... (2) to any person who is intoxicated at the time, ... . A violation of this section is a Class I misdemeanor.
Id. at 792.
Subsequently, Selchert drove himself home, parked his car in the garage, closed the garage door by remote control, stayed in the vehicle, and died of carbon monoxide poisoning.
His wife brought an action against the liquor licensee for wrongful death and loss of consortium. However, the trial court dismissed the wife's complaint.
The South Dakota Supreme Court reversed and noted:
Selchert's claim rests on SDCL Section 35-4-78(2) and Walz v. City of Hudson, 327 N.W.2d 120 (S.D. 1982). (Footnote omitted.)
* * * * * *
In Walz, we stated that violation of a statute as negligence as a matter of law if the statute "was intended to protect the class of persons in which plaintiffs are included against risk of the type of harm which has in fact occurred." (citations omitted) We held that SDCL Section 35-4-78(2) protects persons from the risk of death or injury "as a result of the drunkenness to which the particular sale of alcoholic liquor contributes," and establishes a standard of care or conduct, a breach of which is negligence as a matter of law. (citations omitted) Selchert argues that an injured consumer, such as decedent, is also within that class of protected persons. We agree.
Id. at 792-793.
In a 1985 South Carolina case, a bar patron brought an action against the owner of a bar (among others) to recover damages for injuries sustained when he was struck by a motor vehicle after he left the bar in an intoxicated condition. The plaintiff's complaint alleged that he had been served beer while already in an intoxicated condition and that such was in violation of a South Carolina statute. The trial court overruled the bar owner's demurrer to the complaint and the owner appealed.
The trial court's judgment was affirmed and the following noted:
A violation of a penal statute can result in civil liability. (citation omitted) In determining whether civil liability arises from a violation of a penal statute, we look to see whether the statute is one designed to promote public safety, the complaining party is a member of the class the statute is intended to protect, and the party allegedly at fault is a person upon whom the statute imposes specific duties. (citations omitted)
* * * * * *
Section 61-9-410 [which proscribes the sale of beer to one in an intoxicated condition] clearly promotes public safety. One reason the statute exists is to protect intoxicated persons from their own incompetence and helplessness. See 48 C.J.S. Intoxicating Liquors § 258 at 767 (1981). The statute represents the legislature's *354 judgment that an intoxicated person is a menace to himself. See McClellan v. Tottenhoff, 666 P.2d 408 (Wyo. 1983). Indeed, a purpose in prohibiting a vendor from selling beer to one who is already intoxicated is to prevent the person from becoming even more intoxicated so that he is not a greater risk when he leaves the bar.
Christiansen v. Campbell, 285 S.C. 164, 167, 328 S.E.2d 351, 354 (1985). See also Parrett v. Lebamoff, 408 N.E.2d 1344 (Ind. App. 1980); Pence v. Ketchum, 326 So.2d 831 (La. 1976), overruled in part by Thrasher v. Leggett, 373 So.2d 494 (La. 1979); Vance v. United States, 355 F. Supp. 756 (D.Alaska 1973); Soronen v. Olde Milford Inn, Inc., 46 N.J. 582, 218 A.2d 630 (1966) (reversed on other grounds); Ramsey v. Anctil, 106 N.H. 375, 211 A.2d 900 (1965); Galvin v. Jennings, 289 F.2d 15 (3d Cir.1961); and, Harrison v. Berkley, 32 S.C.L. (1 Strob.) 525, 47 Am.Dec. 578 (1847).

III.
It must be noted that by this holding I in no way offer absolution to the consumers of intoxicants. In the case sub judice, Ms. Cuevas must satisfy the jury that there was a breach of the legislated standards, i.e., that § 67-1-83(1) was violated. She must also prove that she was injured and that her injuries were proximately caused by the appellee's breach. Obviously, any claim she may have will be subject to affirmative defenses such as assumption of risk. Furthermore, under our system of comparative negligence, the jury will be free to apportion any possible damages among those responsible for Cuevas's injuries  including Cuevas herself.
Nonetheless, all of the above mentioned procedures must take place at trial, before a jury. The trial judge in this case, not having the benefit of this opinion, understandably misinterpreted the law and granted summary judgment. In my opinion that error requires reversal.
PRATHER and ROBERTSON, JJ., join in this dissent.
ROBERTSON, Justice, dissenting:

I.
On today's facts Catherine Oakes Cuevas, an experienced, adult drinker and a voluntary purchaser and consumer of intoxicating beverages, assumed the risk of injury incident to her intoxication, and her action should be barred. This result we may not effect in the present posture of the case, for assumption of risk is an affirmative defense and must be pled to be availed of. For reasons that escape me, Defendant's answer is silent on the subject.
I am of the opinion that the Circuit Court erred when it entered judgment summarily holding that Cuevas has no right of recovery of and from the barkeeper/seller for injuries she sustained proximately resulting from her intoxication. Because of Plaintiff's pleading default, that judgment may not be saved on the alternative ground of assumption of risk.
In my view this case raises important questions regarding the nature of that enterprise we call statutory interpretation. This, coupled with my sense that we are likely to see generically similar cases often in the future, leads me to state my views separately.

II.

A.
Historically, the common law afforded one injured because of his or anyone else's intoxication no right of action against a bartender or tavern owner. See Munford, Inc. v. Peterson, 368 So.2d 213, 215 (Miss. 1979); Fisher v. O'Connor's, Inc., 53 Md. App. 338, 452 A.2d 1313, 1315 (1982); 45 Am.Jur.2d, Intoxicating Liquors § 553 at 852 (1969). We began to fashion such a right in Solomon v. State, 71 Miss. 567, 14 So. 461 (1893). In Munford we recognized the right of a guest passenger, injured as a result of his minor driver's intoxication, to recover from the party who sold beer to the minor driver. We there found the primary rule, violation of which could render Munford, Inc. liable, in our local option beer law *355 and, particularly, in Miss. Code Ann. § 67-3-53(b) (1972) prohibiting sales of beer to minors.[1]Munford, 368 So.2d at 215-27.
Today's tort claim is predicated upon an analogous statute, Miss. Code Ann. § 67-1-83(1) (Supp. 1985), a part of our Local Option Alcoholic Beverage Control Law, enacted in 1966. That statute,[2] in pertinent part, provides:
It shall be unlawful for any permittee or other person to sell or furnish any alcoholic beverage . .. to any person who is visibly intoxicated. [Emphasis supplied]
The Royal D'Iberville Hotel being a "permittee" within the statute, Cuevas has charged that it sold her an alcoholic beverage at a time when she was visibly intoxicated. Similar to the case in Munford, today's question is whether we should find in this primary rule a private right of action by one who claims to have been injured as a proximate result of the Royal D'Iberville's violation of the rule.
In tort actions we have often considered that safety rules found in criminal or regulatory statutes furnish the applicable standard of care, even though the particular statute or regulation does not expressly provide for a private right of action. See, e.g., Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 707 (Miss. 1984); Munford, Inc. v. Peterson, 368 So.2d 213, 217 (Miss. 1978); U-Haul Co. v. White, 232 So.2d 705, 708 (Miss. 1970). While the language in some of our cases gives the impression that the rule is without exception, the majority correctly points out that not all such statutes should be held to give rise to a private right of action. See Prosser and Keeton, The Law of Torts § 36 (5th Ed. 1984); Restatement (Second) of Torts § 288 (1965); Cf. Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 13-18, 101 S.Ct. 2615, 2622-25, 69 L.Ed.2d 435, 446-50 (1981); Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 22, 36-37 (1969).
*356 There is no mathematical process by which we might determine whether we should construe the Section 67-1-83(1) clause relied upon by Cuevas as giving rise to a private right of action, only factors we should consider. These factors are set forth in the cases and other authorities cited in the preceding paragraph.
In the ordinary case where we recognize a statute as furnishing the standard of care in a tort action, there already exists a common law right of action for negligence. In such cases the statute merely refines and makes more specific the open textured negligence rule already in place. See, e.g., Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 707 (Miss. 1984). There is no problem of unfair surprise to the defendant in such cases.[3] The defendant is chargeable with knowledge that he has liability to the plaintiff if he is negligent and his negligence causes injury to the plaintiff. It is unlikely that the defendant in such a case would have altered his course of conduct and taken greater care had he known that liability would turn upon the statutory rule rather than the general negligence standard.
Arguably, today's case is different. There is no common law right of action existing as a part of the positive law of this state whereupon one such as Cuevas could sue her bartender. See Boutwell v. Sullivan, 469 So.2d 526, 528 (Miss. 1985); Munford, Inc. v. Peterson, 368 So.2d 213, 215 (Miss. 1979). On the other hand, our February 1979 Munford holding that Section 67-3-53(b) furnishes a standard for imposition of civil liability should have been sufficient to place barkeepers on notice that civil liability could derive from violation of these criminal statutes. Compare Hall v. Hilbun, 466 So.2d 856, 876-77 (Miss. 1985). Arguably, the Munford defendant was subject to unfair surprise but not today's.[4]
Next, whether the scheme of penal and regulatory sanctions created by the legislature should be construed to exclude private enforcement must be thoughtfully considered. Section 67-1-83(4) provides that the maximum penalty for selling an alcoholic beverage to a person visibly intoxicated is a fine of not more than $500.00 and imprisonment of not more than six months, or both. As a regulatory sanction the statute also mandates revocation of the permit to sell alcoholic beverages. If we recognize civil liability, permittees will suddenly be exposed not merely to a possible fine of $500.00 but to payment of damages into hundreds of thousands of dollars, depending, of course, upon the facts of the case.[5] The potential for civil liability seems substantially disproportionate to the relatively modest penalties the legislature has provided by statute.
All of this leads to a rather fundamental question of how we should construe an integrated statute such as our Local Option Alcoholic Beverage Control Law of which Section 67-1-83 is a part. There are those who would argue that the statute gives the permittee, such as the Royal D'Iberville Hotel, a choice: comply with the standards of subsection (1) or suffer the sanctions of subsection (4), the state being essentially indifferent to the permittee's election. It may be argued that the Royal D'Iberville as the proverbial Holmesean bad man[6] has been told by the state that the penalties it risks are those of Section 67-1-83(4) and that this is the limit of its exposure for violations of the standards of subsection (1). I do not take such an amoral view of *357 our law.[7] When conduct is proscribed by our law, the state should never be indifferent to the choices of those actors within its scope.
Without doubt, the legislature could have resolved today's question by providing that no private right of action should be allowed for violations of Section 67-1-83(1). The sanctions provisions of Section 67-1-83(4) coupled with the general enforcement provisions of Section 67-1-91 stop short, however, of providing that resolution. We are at best left with a statute silent and thus indeterminate on the question of whether a private right of action is afforded.
The majority resolves the point by reference to that ultimate will-o-the-wisp: legislative intent, pursuit of which I regard a vain (and generally misguided) exercise. I am interested in what the legislature said, not what we may think it intended. I say this particularly in the present context where we have no published legislative history to shed light upon the intention behind this statute which was enacted some twenty years ago. We are quite presumptuous when we declare the legislature's intent on the question of whether Section 67-1-83 should be construed as giving rise to a private right of action, for I know of no method by which we might determine with confidence a legislature's intent on a subject with respect to which it has not spoken.
Statutory construction is an interpretive enterprise. We should practice it not by speculations with reference to any mythical legislative intent but by seeking the most enlightened and coherent reading the statute may be given.[8] That reading must not only fit the language of the statute; it must provide the best fit. And in seeking this best fit we must respect the electromagnetic force of other law, certainly including prior judicial constructions of similar statutes. The fit must be tailored today, not 1966 when the local option law was enacted.
I do not say we should never look for legislative intent, only that we may legitimately find it in but one place: the words enacted by the legislature. See Russell v. State, 231 Miss. 176, 181, 94 So.2d 916, 917 (1957). I regard as authoritative only those statements of purpose or intent which have been voted upon and enacted. Here see Miss. Code Ann. § 67-1-3 (1972) which declares a purpose and intent "... to require strict regulation and supervision of the ... sale ... of intoxicating liquor ..." Such vague declarations inch us forward only slightly.
What has happened during the twenty year life of this statute is quite relevant to its present meaning. Since 1966 our reports have been filled with cases of persons who have imbibed excessively and inflicted serious personal injury, Hill v. Dunaway, 487 So.2d 807 (Miss. 1986); Griffin v. Holliday, 233 So.2d 820 (Miss. 1970); wrongful death, Munford, Inc. v. Peterson, supra; and engaged in destructive and seemingly senseless criminal activity including murder, Lambert v. State, 462 So.2d 308 (Miss. 1984); Fairchild v. State, 459 So.2d 793 (Miss. 1984); Stevens v. State, 458 So.2d 726 (Miss. 1984); manslaughter, Cook v. State, 467 So.2d 203 (Miss. 1985); aggravated *358 assault, Watson v. State, 465 So.2d 1025 (Miss. 1985); Gray v. State, 427 So.2d 1363 (Miss. 1983); and State v. Clements, 383 So.2d 818 (Miss. 1980); and burglary, Cummings v. State, 465 So.2d 993 (Miss. 1985). And these are just the tip of the iceberg. See City of Clinton v. Smith, 493 So.2d 331, 335 (Miss. 1986).
We are all generally familiar with today's data[9] regarding the social cost of accidents attributable to excessive consumption of alcoholic beverages and of society's felt need for an appropriate response. We should construe the language of Section 67-1-83(1) in the manner best fitting those data and that need. Surely, that best fitting construction is the one which has the greatest capacity to reduce the social cost of alcohol-related accidents. In the absence of reliable information and analyses to the contrary, I consider best the construction which provides the strongest realistic and enforceable deterrent to excessive sales and consumption of alcoholic beverages.
The criminal penalties and sanctions provided by statute, with the advantage of twenty-twenty hindsight exercised some twenty years post-enactment, appear inadequate. Section 67-1-83(4) authorizes only a maximum $500.00 fine and a maximum of six months in jail. Moreover, the language of the statute  "to any person who is visibly intoxicated"  is so vague that effective deterrence via criminal enforcement is wholly impracticable. See Schlag, Rules and Standards, 33 U.C.L.A.L.Rev. 379, 385 (1985); Kennedy, Form and Substance In Private Law Adjudication, 89 Harv.L. Rev. 1685, 1696 (1976). When these factors are coupled with the lack of adequate resources with which to mount a vigorous enforcement program, the likelihood of the criminal law scheme of the statute achieving a substantial deterrent effect is quite minimal.
License revocation is likely a greater threat to the permittee, but the evidence suggests it, too, has not been sufficient to reduce the social cost of alcohol related accidents in this state. The additional deterrent of private enforcement via the tort system  with respect to which the legislature is silent  seems reasonably calculated best to produce societal compliance with the rule of Section 67-1-83(1).
Moreover, this case lies within the electromagnetic field of the construction given Section 67-3-53(b) in Munford. There we recognized a private right of action on the part of one proximately injured by a violation of Section 67-3-53(b), although the legislature no more suggested there a scheme of private enforcement than here. A holding that the analogous Section 67-1-83(1) does not provide a primary rule enforceable in tort would introduce troublesome caprice into our law.
Boutwell v. Sullivan, 469 So.2d 526 (Miss. 1985) exerts little, if any, contrary force. Boutwell held exempt from a private right of action a social host, not a tavern owner or bartender who dispenses intoxicants for profit. Leaving aside the question whether social hosts should receive permanent tort immunity where they serve alcoholic beverages to guests visibly intoxicated,[10] it seems clear that differences do exist between the posture of the social host and the tavern owner arguably justifying different tort rules. See Boutwell, 469 So.2d at 529.

B.
Having concluded that Section 67-1-83(1) may be sued upon in tort, I next consider *359 whether Cuevas was one for whose protection the rule exists. Put otherwise, is Cuevas within the class of persons who when proximately injured by violations of the rule may sue the tortfeasor? We have held repeatedly that not every violation of a criminal statute yield civil liability, only those where the person injured as one of those within the protections of the statute. See Haver v. Hinson, 385 So.2d 605, 608 (Miss. 1980); U-Haul Co. v. White, 232 So.2d 705, 708 (Miss. 1970); Restatement (Second) of Torts § 286 (1965).
The majority answers
... we do not think the legislature intended to impose liability upon a dispenser of intoxicants to an adult individual, such as appellant here, who voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself. We further hold that such a person as appellant is excluded from the protected class as articulated in Munford, Inc. v. Peterson, supra. [Footnotes omitted]
With deference, there is no rational basis upon which these conclusions may be reached. There is no wording in the statute which even mentions the class of persons protected, much less delineating any such class. There is no published legislative history to afford any clues.
The pursuit of legislative intent as our courts have traditionally engaged in it is conceptually wrong and a factually impracticable way to ascertain the meaning of a statute and we should quit it. The pursuit is elusive for myriad reasons. We are almost never clear what we mean by the phrase "legislative intent." Are we searching for some collective intent? If so we seek that which seldom, if ever, exists? As of what time do we seek that intent? When the statute was enacted? Or, should we ask what the legislature would have intended had it known of today's often different facts and circumstances, not to mention today's political currents?
Are we seeking the actual in-mind thoughts of the persons who drafted the bill? Or those who voted for it? Individual legislators vote for particular bills for a host of varying and conflicting reasons, ranging from the statesman-like to the base. Compromises are reached. Votes are traded; you vote for my bill and I'll vote for yours. Legislators often vote for bills without any particular intent, because they have not read the bill, because they do not understand it, or out of indifference.[11]
The statutory language here for construction comprises at most two lines in a complex twenty-two page bill enacted in an atmosphere of great public emotion and political controversy. See Miss. Laws, 1966, ch. 540, § 32(a), formerly House Bill No. 112, approved May 21, 1966, effective July 1, 1966. That the average legislator voting for or against the bill was even aware of this language, much less had thought through its meaning seems most unlikely, as it seems likely that among those who did read it are individual legislators who thought it meant different things. In the absence of published, officially approved legislative history, we enter the realm of the mythical when we seek legislative intent.
Our law is dynamic, not something that is but an inexorable process of becoming. I would read Section 67-1-83(1) so that its existence as a part of our law in 1986 is best justified. I would give it that interpretation which best fits the language even though I thought one or more legislators had a contrary or different view in mind at the time of enactment; for it is the language that has been enacted, not the unexpressed thought processes of the legislators.[12] I would give the words of the statute the reading best calculated to make life in this state better, that calculation, of *360 course, being limited in theory by the requirements that the statute be read in the manner which fits the language and coheres in principle with our other law, and in practice by the inevitable indeterminancy of my aim and my relative ignorance of fact. So qualified, the best fit seems one which affords a private right of action to anyone injured as a proximate result of a tavern owner or bartender's violation of Section 67-1-83(1), subject only to such defenses as are otherwise provided by law.
Responding to the electromagnetic tug of our prior decisions, I find support in our holdings in various contexts that one does not remove himself from the protection of our law by voluntary consumption of alcoholic beverages. See, e.g., Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 707 n. 8 (Miss. 1984) (Fourth of July celebrant within class protected by highway safety statutes); Dickerson v. State, 441 So.2d 536, 538 (Miss. 1983) (homicide laws protect "drunks as well as deacons"); City of Jackson v. Locklar, 431 So.2d 475, 477 n. 1 (Miss. 1983) (protruding city-maintained manhole cover indifferent to whether driver is "high or dry"). There being available in today's context no statutory (or other) expression to the contrary, I find inescapable the conclusion that one may not be excluded from access to Section 67-1-83(1) solely because of personal consumption of alcoholic beverages. To find in Section 67-1-83(1) a distinction between innocent third party plaintiffs and purchaser/consumer plaintiffs, as the majority opinion most assuredly does, is to import a distinction not found in the statute, inconsistent with its best reading, and incoherent with principles imbedded in much of the rest of our law.

III.
I turn now to the basis upon which, had it not been for defense counsel's default in pleading, I would affirm the judgment summarily entered below. Cuevas is a thirty-one year old woman who has been drinking for seventeen years. She acknowledged in her deposition that she had been intoxicated on previous occasions. There is no reason on this record to doubt that, prior to November 12, 1981, she was well aware of the physiological effects of excessive drinking. On the occasion in issue, she admitted that she was aware that she was intoxicated for some three hours prior to the accident. And from the allegation that she was "visibly intoxicated" we may assume that she was in fact intoxicated.
As explained above, the language of the statute should be read  and fleshed out  in a manner that will best deter excessive sale and consumption of alcoholic beverages. That end would be circumvented if our law provided no deterrent to the excessive consumer of alcoholic beverages.
On the facts reflected in the present record, even reading them most favorably to Cuevas, the risk of the accident and injuries complained of were knowingly accepted by Cuevas. Whether my approach be labeled assumption of risk or whatever,[13]see, e.g., Nichols v. Western Auto Supply Co., Inc., 477 So.2d 261, 263-65 (Miss. 1985); McLeod v. Whitten, 413 So.2d 1020, 1022 (Miss. 1982); Daves v. Reed, 222 So.2d 411 (Miss. 1969); Saxton v. Rose, 201 Miss. 814, 29 So.2d 646 (1947), Cuevas voluntarily and knowingly placed herself in a position of potential danger and in my view should be charged in law with the appreciation of the fact that injury to herself was likely to occur as a consequence.
The normal adult (and there is no reason to exclude Cuevas from this category) enters a bar or lounge with full awareness of the risks attendant upon excessive consumption of alcoholic beverages. One of those risks is injury to oneself, a risk which came to fruition in this case. Cuevas may have been careful in the sense that, given the decision to enter the bar and to continue to order drinks past the point where by her own admission she became visibly intoxicated, *361 she tried to take care for her safety. This is not enough. The bar or lounge attracts risk preferrers. There is no reason in policy or principle why such persons should be protected from the consequences of the risks they have voluntarily assumed arising from the beverages they have voluntarily consumed. Cf. Posner, Economic Analysis of Law 158 (3d ed. 1986).
In conventional assumption of risk cases, our rule has required that the person precluded from recovery have known of the risk. In this setting it may be argued that the risk is attendant upon excessive consumption of alcoholic beverages, not mere consumption, and that at the time the plaintiff's drinking becomes excessive, her capacity for appreciation of the risk is at best dulled. As explained above, our law is an interpretive enterprise subject to a requirement of coherence in principle. The proposition is well settled in our law that voluntary intoxication does not negative intent in the context of a criminal prosecution. See, e.g., Cummings v. State, 465 So.2d 993, 995-96 (Miss. 1985); Hall v. State, 427 So.2d 957, 961-62 (Miss. 1983); McDaniel v. State, 356 So.2d 1151, 1161 (Miss. 1978). If one's voluntary intoxication may not negative her intent to commit a crime, it should follow that such intoxication may not negative intent to assume the risk incident to excessive drinking. To hold otherwise would introduce an indefensible arbitrariness within our law.
Further, the imposition of civil sanctions upon excessive alcohol consumers is already a part of our law. In Munford, Inc. v. Peterson, for example, the drunk driver, Tommy Blankenship, was certainly liable in tort for Peterson's death. Respect for coherence in principle mandates that, where he has in fact assumed the risks incident to his intoxication, our law preclude him from recovery for his own injuries caused by the same excessive drinking that leads to his being liable for Peterson's death.
Beyond this, I find imbedded in our Local Option Alcoholic Beverage Control Law the principle of respect for personal choice. In this we have moderated this state's long unsuccessful effort to legislate morality with respect to personal consumption of alcoholic beverages. Subject to certain restrictions not relevant here, our law now recognizes the right of an adult person to consume alcoholic beverages if that person so chooses, and provided that person does no injury to others. It would be irrational in my view for our law to allow such free choice and at once allow one injured as a result of exercising that choice to recover damages from the one who enabled him to exercise that choice.
It may be argued that the mutual deterence policy would be served as well by a construction of the statute placing direct consumer/excessive drinkers outside the class who may sue upon the statute. This is the view taken by the Circuit Court. Under this construction tavern owners would be deterred by the threat of third party actions, while direct consumers would be deterred by the combination of their potential tort liability to persons they may injure and by their lack of a remedy against the tavern owner. Such an approach, we might concede, would be in practical effect quite comparable to the everyone - is - in - the - protected - class - but - subject - to - assumption - of - risk - and - comparative - negligence view I would adopt, yet it would fall short, for it would paint a little too broadly is denying any recovery to the young or inexperienced drinker who has not assumed the risk.
Not every plaintiff in a case such as this should be barred by assumption of risk. First time drunks with no advance appreciation of how excessive drinking may affect them are in a category altogether different from Cuevas, an experienced adult drinker. See Ewing v. Cloverleaf Bowl, 20 Cal.3d 389, 143 Cal. Rptr. 13, 572 P.2d 1155 (1978). Deterence theory has its limits. The law may not be rationally expected to deter those who have no appreciation of the risks incurred. While any judicial decision once final and published exerts an electromagnetic force beyond its facts, I will leave exploration of the outer limits of the power *362 and content of that force in the present case to another day.
More fundamentally, the proposed protected class construction does not fit the language of Section 67-1-83(1). There is not one word or nuance within the statute which may fairly be said to yield the conclusion that it should be construed so as to exclude from its protections direct consumers of alcoholic beverages. We are not at liberty to read a statute in a manner that does not fit the language employed by the legislature. On the contrary we must give the language its best fit, the fit which best today justifies the enactment as a living organism, the fit which best coheres in principle with our other law.

IV.
In the end I consider that we must reverse the judgment entered below and direct that the case be restored to the active docket of the Circuit Court of Harrison County. The Royal D'Iberville Hotel did not plead assumption of risk[14], nor did the Circuit Court insofar as we are aware consider that issue in granting summary judgment.
Rule 8(c), Miss.R.Civ.P., designates assumption of risk an affirmative defense and directs that a party defendant wishing to assert it "shall set [it] forth affirmatively." Failure to plead the defense may constitute a waiver. See Bell v. First Columbus National Bank, 493 So.2d 964, 968 (Miss. 1986). Whether on remand defense counsel should be allowed to amend his answer and plead assumption of risk and subsequently file a new motion for summary judgment based thereon are not matters before us today.
DAN M. LEE, PRATHER and SULLIVAN, JJ., join in this opinion.
GRIFFIN, J., not participating.
NOTES
[1] See Ala. Code § 6-5-71 (1975).

The Mississippi Legislature at the Regular 1986 Session passed House Bill No. 916, a dram shop act, effective upon its passage. However, the Governor vetoed the act and it never became effective.
[2] In criminal law, a person who voluntarily becomes intoxicated is criminally liable for his acts in committing a crime. Intoxication is no defense. Smith v. State, 445 So.2d 227 (Miss. 1984); McDaniel v. State, 356 So.2d 1151 (Miss. 1978).
[3] Jurisdictions in the United States are divided on the question presented in this case.
[1] A comparison and discussion of relevant and related statutes which regulate the dispensation of alcoholic beverages may be found in Boutwell v. Sullivan, 469 So.2d 526 (Miss. 1985). In Boutwell, § 67-1-83(1) was considered as evincing a statutory standard of care but was found to be inapplicable to the facts of that case.
[2] A defendant's liability always rests upon proximate cause and the foreseability of the resultant injury. See Stanage v. Bilbo, 382 So.2d 423 (Fla.App. 1980). (No proximate cause where defendant sold beer to a 13-year-old girl who gave it to her companion and the companion stumbled causing shotgun he was holding to discharge and injure plaintiff.) "The general rationale of those cases holding that the sale or furnishing of liquor to an able-bodied man does not produce liability in tort for resulting injury is that the furnishing of liquor is not the proximate cause of the injury." (emphasis in original). Halvorson v. Birchfield Boiler, Inc., 76 Wash.2d 759, 769, 458 P.2d 897, 902 (1969) (Finley, J., dissenting); see, e.g., Hall v. Budagher, 76 N.M. 591, 417 P.2d 71 (1966). Other authorities have found the proximate cause of such injury to be the sale rather than the consumption of the liquor. See, e.g., Prevatt v. McClennan, 201 So.2d 780 (Fla.App. 1967). The modern view, and probably the majority view, in cases involving a liquor vendor's liability is that the furnishing of intoxicants may be the proximate cause of injury. Buchanan v. Merger Enterprises, Inc., 463 So.2d 121, 126 (Ala. 1984); Vance v. United States, 355 F. Supp. 756, 761 (D.Alaska 1973). Those who cling steadfastly to the myth that the continued selling of alcohol to a visibly intoxicated patron cannot be the proximate cause of injury are "wearing blinders when it comes to the ordinary course of events." Buchanan, 463 So.2d at 126; McClellan v. Tottenhoff, 666 P.2d 408, 415 (Wyo. 1983).

The defendant's negligence however need not be the sole cause of an injury in order for an action against that defendant to lie. In Munford it was noted:
The facts in this case raise a jury issue as to whether or not there was causal connection between the incompetence of the driver as a result of drinking the beer, and the accident. It is required only that the intoxication be a contributing cause to the accident, not the sole proximate cause.
Munford, 368 So.2d at 218. When reasonable minds might differ on the matter, the question of what is the proximate cause of an injury is usually one for the jury. Dr. Pepper Bottling Co. of Miss. v., Bruner, 245 Miss. 276, 148 So.2d 199 (1962); City of Jackson v. Reed, 233 Miss. 280, 102 So.2d 342 (1958); Mathews v. Thompson, 231 Miss. 258, 95 So.2d 438 (1957); American Creosote Works of La. v. Harp, 215 Miss. 5, 60 So.2d 514 (1952).
[1] Munford in no way turns on the fact that the guest passenger was a minor. A Munford-type action is available to any third party, youth or adult, injured as a proximate result of the defendant's sale of beer to a minor.
[2] The entire Section 67-1-83 reads as follows:

(1) It shall be unlawful for any permittee or other person to sell or furnish any alcoholic beverage to any person who is known to be insane or mentally defective, or to any person who is visibly intoxicated, or to any person who is known to habitually drink alcoholic beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit-forming drugs. It shall also be unlawful for the holder of any package retailer's permit to sell any alcoholic beverages except by delivery in person to the purchaser at the place of business of the permittee.
(2) It shall be unlawful for any permittee or other person to sell or furnish any alcoholic beverage to any person to whom the commission has, after investigation, decided to prohibit the sale of such beverages because of an appeal to the commission so to do by the husband, wife, father, mother, brother, sister, child, or employer of such person. The interdiction in such cases shall last until removed by the commission, but no person shall be held to have violated this subsection unless he has been informed by the commission, by registered letter, that it is forbidden to sell to such individual or unless such fact is otherwise known to such permittee or other person.
(3) It shall be unlawful for any holder of a package retailer's permit engaged solely in the business of package retail sales under this chapter to sell any alcoholic beverage before 10:00 a.m. and after 10:00 p.m. It shall also be unlawful for said holder to sell alcoholic beverages on Sunday, Christmas Day and election days; provided, however, it shall be lawful for said holder and any holder of an on-premises permit to sell alcoholic beverages on election days in all qualified resort areas, whether located within or without the limits of incorporated municipalities in this state, in counties wherein such sale of alcoholic beverages is lawful. Within that part of an election district which does not lie within a qualified resort area, it shall be lawful to sell alcoholic beverages on election days except during the hours that the polls are officially open for the election of a public official.
(4) Any person who shall violate any of the provisions of this section shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than five hundred dollars ($500.00) or by imprisonment in the county jail for a term of not more than six (6) months or by both such find and imprisonment, in the discretion of the court. In addition, the commission shall forthwith revoke the permit of any permittee who violates the provisions of this section.
[3] In theory there is no unfair surprise in any event in the sense that the primary rule articulating the actor's duty through the form of a criminal or regulatory statute is valid and enforceable. Cf. Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 673 (Miss. 1983).
[4] Even the Munford defendant may have been charged with notice via our somewhat dated (and, because it is not cited in any of the briefs, perhaps forgotten) decision in Solomon v. State, 71 Miss. 567, 14 So. 461 (1893).
[5] Cuevas' complaint demands damages in the sum of $350,000.00.
[6] See Holmes, The Path of the Law 10 Harv.L. Rev. 457, 459, 461 (1897).
[7] In the same sense the Buick Motor Company may have argued that it was unfairly surprised when Mrs. MacPherson was allowed to recover. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916). But Buick was already under a duty imposed by the positive law of New York to exercise due care in the manufacture and assembly of its automobiles. Its violation of the preexisting rule in which that duty was found was the reason its conduct was and should have been subject to condemnation in a court of law. Compare Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 672-73 (Miss. 1983); see Hart, The Concept of Law 79-88 (1961).
[8] The approach I take to the matter of statutory construction is suggested by Ronald Dworkin in Taking Rights Seriously 107-110 (1977) and elaborated in his most recent work Law's Empire 313-54 (1986). I do not accept Dworkin's approach entirely, for some of the background materials he would credit appear discreditable via the same techniques he has employed in demolishing the traditional "speaker's meaning" approach to legislative intent. Also, I would give greater effect to the living present of statutory language, as distinguished from its political history. But see Law's Empire at 348-50.
[9] See Pearl, The Party's Over: Controlling Drunk Drivers, 17 Urb.Law. 813-26 (1985); Comment, The Louisiana DWI Laws in 1984: Where Do The Defendants Stand? (If They Can ...), 30 Loy.L.Rev. 361-75 (1984); Footer, Driving While Intoxicated, 20 Trial 40-44 (Oct. 1984); Malikin, Social Disability, Chapter II (1973); Grad, Alcoholism and the Law (1971); Cahalan, Problem Drinkers (1970). Moreover, the Mississippi Department of Public Safety reported for the year 1985 some 6604 alcohol-related automobile accidents, 2946 of which resulted in personal injury and 142 of which resulted in death.
[10] See French, et al., Social Host Liability For The Negligent Acts of Intoxicated Guests, 70 Corn.L.Rev. 1058 (1985).
[11] The traditional "what did the legislators (founding fathers?) mean" approach to statutory construction has been demolished in Dworkin, Law's Empire 317-37 (1986) so effectively that it should never again be taken seriously.
[12] In a formal sense, only the language of the statute may be validated for only that feature of the statute has satisfied all of the criteria for a rule becoming law. Hart, The Concept of Law 100 (1961).
[13] Even in cases where assumption of risk may not apply, a plaintiff's recovery may be reduced in proportion to her own negligence under our familiar comparative negligence rule. Cf. Hill v. Dunaway, 487 So.2d 807, 810 (Miss. 1986).
[14] I do not claim to understand the reason defense counsel failed to plead assumption of risk. Perhaps this was because of confidence that personal consumers such as Cuevas would not be held within the class protected by Section 67-1-83(1)  a proposition accepted by the Circuit Court and some of the members of this Court. Or, perhaps defense counsel took seriously their alternative plea that the sole proximate cause of Cuevas' injury was her own negligence in continuing to drink after she became intoxicated. Historically, some courts have accepted this view  that the plaintiff's injury is caused by her drinking and not by the bartender's serving the drink. See Cole v. Rush, 45 Cal.2d 345, 289 P.2d 450 (1955); Henry Grady Hotel Co. v. Sturgis, 70 Ga. App. 379, 28 S.E.2d 329, 333 (1943). A moment's reflection reveals this idea as nonsense. It has been rejected elsewhere as an "obsolete fiction," Ewing v. Cloverleaf Bowl, 20 Cal.3d 389, 400, 143 Cal. Rptr. 13, 19, 572 P.2d 1155, 1160 (1978); Vesely v. Sager, 5 Cal.3d 153, 164, 95 Cal. Rptr. 623, 631, 486 P.2d 151, 159 (1971). We should not give it the time of day.