368 So.2d 213 (1979)
MUNFORD, INC.
v.
Ira PETERSON et al.
No. 50856.
Supreme Court of Mississippi.
February 21, 1979.
Rehearing Denied March 21, 1979.
*214 Daniel, Coker, Horton, Bell & Dukes, Cy T. Faneca, Jr., Gulfport, for appellant.
Boyce Holleman, Ben F. Galloway, III, Gulfport, for appellees.
Before ROBERTSON, WALKER and LEE, JJ.
LEE, Justice, for the Court:
The parents and brothers of Scott Peterson instituted suit in the Circuit Court, First Judicial District of Harrison County, against Munford, Inc. and Tommy Blankenship for damages accruing by reason of the wrongful death of Scott Peterson. The jury returned a verdict in favor of the Petersons for one hundred thousand dollars ($100,000), judgment was entered against Munford, Inc., and in favor of Blankenship, and Munford, Inc. appeals.
On the afternoon of May 28, 1975, Scott Peterson and four other boys planned to get together after baseball practice. Peterson and one of the boys were to spend the night at the home of Blankenship. Later that evening, one of them slipped the keys to the family car, found some Vodka, and took it with him to the appointed meeting place (a boy's home). They all went to the Majic Market (owned and operated by the appellant), where they bought some orange juice and later drank it with the Vodka. One of the boys was fifteen (15) years of age, three (3) of them were fourteen (14), and one (1) was thirteen (13). After drinking the Vodka, they went back to the Majic Market and one of the fourteen-year-olds entered the *215 establishment and purchased a six-pack containing 14-oz. cans of beer. The woman operator asked him if he was eighteen (18) years of age. He replied in the affirmative, but she made no effort to have him prove his age or identify himself. The record indicates that he looked no older than a fourteen-year-old boy.
The boys went to David Black's house (one of the party) and drank the beer. They then decided to return to the Majic Market for more beer. The seventeen-year-old sister of Black refused to let him leave because she knew they were drinking beer. The other four drove to the Majic Market where a different boy went in and bought a six-pack of beer (king-size). No inquiry was made concerning his age. They went out on a side road and drank the beer.
After consuming the second package of beer, the boys went back to the Majic Market where one of them again entered the place and bought another six-pack without any questions being asked about his age. They drove out on the side road, drank the beer and began to ride around. About 4 a.m., Blankenship was driving the automobile and was traveling west on U.S. Highway 90. A hard rain had fallen, there was water on the road, he lost control of the vehicle, crossed the median and south lanes of the highway, hit the seawall, the automobile hurdled fifty-seven (57) feet through the air, landed on the beach, and turned over five (5) times, traveling three hundred thirty-seven and a half (337 1/2) feet. Scott Peterson was thrown out of the car and it rolled over him, fatally crushing his chest.
The declaration charged negligence against Munford, Inc. for selling beer to the boys in violation of the law, all of whom were under the age of eighteen (18) years, and who became intoxicated as a result of drinking the beer. Blankenship was charged with negligence in the operation of the vehicle.

I.-II.
Appellant contends (1) the trial court erred in overruling appellant's demurrer since the plaintiff failed to state a cause of action upon which relief could be granted, and (2) the trial court erred in instructing the jury that appellant was negligent as a matter of law.
Under the common law, there is no action for damages in the selling or giving away of intoxicating liquors. The rule is stated in 45 Am.Jur.2d Intoxicating Liquors § 553, at 852 (1969), as follows:
"At common law it is not a tort to either sell or give intoxicating liquor to ordinary able-bodied men, and it has been frequently held that in the absence of statute, there could be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished."
Where there is no statute pertaining to a subject, the common law prevails. City of Jackson v. Wallace, 189 Miss. 252, 196 So. 223 (1940).
While the Wisconsin Supreme Court upheld the common-law principle stated above in Garcia v. Hargrove, 46 Wis.2d 724, 176 N.W.2d 566 (1970), (Wisconsin subscribes to the comparative negligence doctrine) the dissenting opinion of Chief Justice Hallows may have expressed a modern trend:
"The time has arrived when this court should again exercise its inherent power as the guardian of the common law and hold upon general principles of common-law negligence a person, who, when he knows or should have known a person is intoxicated, sells or gives intoxicating liquor to such a person, is guilty of a negligent act; and if such negligence is a substantial factor in causing harm to a third person, he should be liable with the drunken person under our comparative-negligence doctrine. Conceded, the common law in this state for almost 100 years has been to the contrary. [Cases cited] but the basis upon which these cases were decided is sadly eroded by the shift from commingling alcohol and horses to commingling alcohol and horsepower." (Emphasis added). 176 N.W.2d at 572.
However, in the discussion of the two questions presented here, we do not look to, *216 or decide, the application of the common law in view of our statutes. Mississippi Code Annotated Section 67-3-53(b) (1972) provides the following:
"In addition to any act declared to be unlawful by this chapter, or by sections 27-71-301 through XX-XX-XXX, and sections 67-3-17, 67-3-27, 67-3-29 and 67-3-57, it shall be unlawful for the holder of a permit authorizing the sale of beer or wine at retail:
(b) To sell, give, or furnish any beer or wine to any person visibly or noticeably intoxicated, or to any insane person, or to any habitual drunkard, or to any person under the age of eighteen (18) years." (Emphasis added)
The above section is a part of Chapter 3, Title 67 of Mississippi Code Annotated (1972) which relates to the sale of light wine, beer and other alcoholic beverages, the purpose of which was to legalize and regulate the manufacture and sale of such beverages in the State of Mississippi. We are of the opinion that although the said chapter was enacted for the legalization and regulation of the manufacture and sale of such beverages, Section 67-3-53(b) also was adopted for the protection of the general public, including persons such as Scott Peterson. The declaration charged, among other things, that appellant sold beer to the minors in violation of Mississippi law and that such negligence contributed to the wreck and to the death of Scott Peterson.
The decisions of other states are divided on the question of liability under the facts hereinabove stated. In Davis v. Shiappacossee, 155 So.2d 365 (Fla. 1963), a seller of intoxicants to a minor was held to be civilly liable for the death of the minor to whom the product was sold. The Court said:
"At 8:30 one night in January 1960 the minor son accompanied by two friends, 17 and 18 years old, respectively, went to the Estuary Bar to purchase beverages. They were met there by Farmer who, without inquiring about their ages, delivered to them for a price one case of beer containing 24 cans and one-half pint of whiskey. The boys proceeded to a drive-in theatre and then drove to a park near a school. During these visits they drank the whiskey and 14 cans of the beer. As a consequence the petitioner's son and his younger companion became nauseated. When they recovered to some extent they went to the home of the older companion and left him there. Afterward as petitioner's son, still under the influence of liquor, according to the allegations of the complaint, was driving along the road at the rate of 55 miles an hour, accompanied by the remaining companion, he lost control of the car, struck an oak tree and turned over. Within six hours of the purchase of the alcohol petitioner's son was dead from the injuries received when the car was wrecked.
* * * * * *
The court observed that generally, in the absence of statute, a seller of liquor is not responsible for injury to the person who drinks it. It is true that such a `Dram Shop Act' has not been enacted in Florida.
We feel that just here we must depart from the reasoning of the able judges who determined the controversy in the District Court of Appeal although their logic along the trail from the cited cases in the absence of a Dram Shop Act appears impeccable." 155 So.2d 366, 367.
For decisions in other jurisdictions, see also Marusa v. District of Columbia, 157 U.S. App.D.C. 348, 484 F.2d 828 (1973); Brattain v. Herron, 159 Ind. App. 663, 309 N.E.2d 150 (1974); Pence v. Ketchum, 326 So.2d 831 (La. 1976); Taggart v. Bitzenhofer, 35 Ohio App.2d 23, 299 N.E.2d 901 (1972); Mason v. Roberts, 35 Ohio App.2d 29, 300 N.E.2d 211 (1971).
This Court expressed the legislative concern for public safety and legislative intent when enacting the beer and wine statutes, in Alexander v. Graves, 178 Miss. 583, 173 So. 417 (1937), by stating:
"Chapter 171 of the Laws of Mississippi of 1934, and section 1, provide `that it shall hereafter, subject to the provisions hereinafter set forth, be lawful in this state to transport, store, sell, distribute, *217 possess, receive and/or manufacture wine and beer of an alcoholic content of not more than four per centum by weight.' By section 2 it was provided `that if any county, at an election held for the purpose under the election laws of the state, shall by a majority vote of the duly qualified electors voting in the election determine that the transportation, storage, sale, distribution, receipt, and/or manufacture of such beverages, shall not be permitted in such county, then the same shall not be permitted therein,' etc.
* * * * * *
Prior to the enactment of chapter 171 above referred to, the state had outlawed the sale of all liquors, including beer and wine, containing in excess of 1.5 per cent of alcohol. See Laws of 1908, cc. 113-117, pp. 112-120. The Legislature was departing from the policy of total prohibition to a limited sale of intoxicating liquors. They were aware of the history of legislation in reference to the sale and possession of intoxicating liquors dating back many years. It was recognized that there might be portions of the territory within the county where the sale of beer and wine might be hurtful to morals and to the safety of the community. They recognized that a vote of the entire county might authorize the sale of beer and light wines in the county, or that a majority might prohibit it; but they also recognized that in some parts of a county favorable to the sale as a whole, there might be zones where it would be hurtful and injurious to public morals and public safety. In our opinion, it was intended to confer upon the board of supervisors in territory outside of the municipality, and upon the municipality within its territory, the power to fix zones in which the sale might be conducted, and other zones in which it might be prohibited. They were not dealing with a subject entirely harmless within itself. They knew that such liquors when drunk to excess produced intoxication. Fuller v. Jackson, 97 Miss. 237, 52 So. 873, 30 L.R.A.(N.S.) 1078, in which case it was held that a beverage containing in excess of 2.12 per cent. of alcohol was intoxicating. They knew this to be an age in which the machine is much used  almost universally used in transporting people from point to point; and they knew that intoxicating liquors impaired both vision and judgment in the operation of such machines. The police department of the city of Jackson estimates that a large percentage of motor accidents are due to the use of intoxicating liquor; and also that it is responsible for a large percentage of crime in the municipality  a fact known to all informed people. They knew, also, that the use of intoxicants stimulates the baser passions, breaks down mental and moral resistance to temptation, and promotes immorality. They are also conversant with the fact that under modern conditions people use automobiles to go considerable distances from their place of residence and neighborhood, and that they are not as considerate of the sentiment of other communities as their own." 178 Miss. at 590-591, 594-595; 173 So. at 418, 420.
The principle that violation of a statute constitutes negligence per se is so elementary that it does not require citation of authority. When a statute is violated, the injured party is entitled to an instruction that the party violating the statute is guilty of negligence, and, if that negligence proximately caused or contributed to the injury, then the injured party is entitled to recover. The demurrer admitted that appellant violated the law and the evidence is undisputed that it did so. The demurrer was properly overruled and the peremptory instruction on negligence[1] was correctly given. The law is plain and unambiguous in prohibiting the sale, giving or furnishing beer or wine to any person under the age of eighteen (18) years by the holder of such a *218 permit. The method of determining a minor's age is for the proprietor to select. Suffice it to say, the responsibility is his to see that the law is not violated by him.

III.-IV.
Appellant further contends (3) the trial court erred in overruling the defendant's motion for a directed verdict since plaintiff failed to prove defendant's action was a proximate cause of the injury, and (4) the trial court erred in overruling defendant's motion for a judgment notwithstanding the verdict since the jury verdict was against the overwhelming weight of the evidence.
The evidence is uncontradicted that appellant sold to the minors involved a quantity of beer in violation of the statute, that the driver of the vehicle, Blankenship, and occupants of the automobile were intoxicated to the extent that they were "feeling no pain," that the sister of one of the boys refused to permit him to accompany the other boys to the Majic Market on their second trip to obtain beer because she recognized that they were under the influence of alcohol, that the driver of the car had consumed five (5) 14-oz. cans of beer (over a half gallon) and that on a wet highway, he lost control of the vehicle after having done so. The physical facts showed that the vehicle traveled across the highway, hit the seawall, went over the seawall a distance of fifty-seven (57) feet in the air, traveled 337 1/2 feet and turned over five times in the process, which indicated that it was moving at a high rate of speed.
On motion for a directed verdict, all facts proved, together with reasonable inferences, are considered most favorably for the party against whom it is requested. Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975). The facts in this case raise a jury issue as to whether or not there was causal connection between the incompetence of the driver as a result of drinking the beer, and the accident. It is required only that the intoxication be a contributing cause to the accident, not the sole proximate cause. The evidence was sufficient to withstand a motion for directed verdict and the verdict was not against the overwhelming weight of the evidence.

V.
Appellant contends the trial court erred in refusing instructions on contributory negligence and assumption of risk and in granting an instruction that plaintiff was not negligent as a matter of law.
The appellant requested an instruction on assumption of risk, which was refused by the court. The instruction contains the general phrase, "that Scott Peterson knew that the conditions in which he placed himself were inconsistent with his safety" throughout. It was not specific, it did not follow the evidence, gave the jury no guide for a determination of the question, and the court committed no error in refusing same. Continental Casualty Company v. Lang, 254 Miss. 422, 181 So.2d 340 (1965).[2]
The co-defendant Blankenship, who received a favorable verdict from the jury, requested an instruction on contributory negligence which was refused. The appellant did not request such an instruction and cannot complain that the court erred in refusing that instruction to Blankenship.
The appellees requested and were granted the following instruction:
"The Court instructs the jury that as a matter of law in this case, the Plaintiffs' decedent, was not negligent, nor at fault, nor to blame for his death; and cannot be charged with any negligence or fault."
Appellees seek the benefit of the statute to impose liability on appellant, yet argue that Scott Peterson was a member of a protected class and that he could not be guilty of negligence. They cite Hartwell Handle Company v. Jack, 149 Miss. 465, 115 So. 586 (1927). That case construed the Child Labor Laws, is distinguished from the *219 present case and is no authority for their position on this point. We have stated hereinabove that the provision of the statute prohibiting sale of beer to persons under the age of eighteen years (and others named therein) is for the public safety.
The evidence is undisputed that Scott Peterson and the other boys chipped in (pooled their money) to buy the beer, that they were all together drinking it, that they all "felt no pain," that they were drinking the beer to make them feel good, and that Scott Peterson knew Blankenship had drunk a quantity of beer, in addition to drinking Vodka. Appellant set up an affirmative defense of contributory negligence in its answer. The instruction (peremptory) directly contradicted the evidence and it precluded the jury from applying the law of comparative negligence, although the appellant did not request an instruction thereon, [Winfield v. Magee, 232 Miss. 57, 98 So.2d 130 (1957)] was highly prejudicial and constituted reversible error.

VI.
Appellant further contends the trial court erred in granting Instruction C-00 which allowed the jury to find against appellant without finding against Tommy Blankenship.
Part of the above instruction was deleted from the court reporter's notes by typographical error, but the entire instruction was made a part of the record and appears in the abstract. The instruction was properly given. Munford, Inc. cannot complain that the jury found in favor of the plaintiff against it and in favor of Tommy Blankenship, driver of the vehicle. The jury may return a verdict against one co-defendant and for another or in favor of the agent and against the principal. Gulf Refining Company v. Myrick, 220 Miss. 429, 71 So.2d 217 (1954), held:
"In the case of Illinois Central Railroad Co. v. Clarke, 85 Miss. 691, 38 So. 97, 98, Clarke brought suit against the railroad company and its engineer for damages inflicted upon him by the wrongful running of a train of cars against him and his vehicle while crossing the railroad track; the railroad company acted only through and by its engineer and codefendant as its servant and agent; the verdict was against the railroad company but it acquitted the engineer from all liability to the plaintiff. On appeal this Court said: `The appellee could have instituted suit for the entire amount of damage which he had suffered against either of the parties, or against both, as he chose to do. Had the verdict been against both, this would neither have lessened nor increased the liability of appellant for the entire judgment. Nor is the fact that the jury, no matter by what motive actuated, failed to find a verdict against appellant's codefendant, in anywise prejudicial to the rights which may exist between appellant and its codefendant, growing out of the subject-matter of this suit. Conceding the irregularity of the verdict, and that in fact appellee should have recovered against both, this concession conveys an implied acknowledgment of the rightfulness of the verdict against appellant, and justifies the affirmance thereof, leaving appellant and appellee to settle the existing equities between them as they shall deem best. Because appellee, by reason of the whim or sympathy of the jury, was denied a recovery against both who were liable, is no argument why he should be deprived of that which he did obtain. The question here involved, while new in instance, is not novel in principle. See Knowles v. Summey, 52 Miss. 377; Weis v. Aaron, 75 Miss. 138, 21 So. 763, 65 Am.St.R. 594; Railway Co. v. James, 73 Tex. 12, 10 S.W. 744, 15 Am.St.R. 743.'" 220 Miss. at 434, 71 So.2d at 218-219.

VII.-XI.
Appellant assigns and argues (7) the closing argument of appellees' counsel was designed to invoke sympathy for the other parties and prejudice appellant; (8) the trial court erred in not granting appellant's motion for a mistrial because of remarks made by appellee's counsel in opening argument; *220 (9) the trial court erred in refusing to overrule appellant's objections to opposing counsel's interrogation of a prospective juror, Marilyn Knight; (10) the trial court erred in refusing appellant's motion in limine and admitting evidence of other sales of beer [sales to other boys in the group]; and (11) cumulative effect of the errors made by the trial judge was so prejudicial that the effect constitutes reversible error.
We have carefully considered those assignments and conclude that, either they do not constitute error, or they will not occur on a retrial.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
NOTES
[1] "The Court instructs the jury that in this case, the Defendant, Munford, Inc. was negligent as a matter of law."
[2] Morris v. Lammons, 243 Miss. 684, 139 So.2d 867 (1962) and Saxton v. Rose, 201 Miss. 814, 29 So.2d 696 (1947) hold that an assumption of risk instruction is proper in a case involving an intoxicated driver.