RANDOLPH, Justice,
specially concurring:
¶ 34. I write separately to reject the dissents’ attempt unreasonably to expand and stretch the parameters of the “circle of reasonable foreseeability” (Mauney v. Gulf Refining Co., 193 Miss. 421, 9 So.2d 780, 781 (1942)), and to contravene the doctrine of stare decisis by denuding a thirty-three-year-old decision (Robinson v. Howard Brothers of Jackson, Inc., 372 So.2d 1074 (Miss.1979)), while disclaiming an attempt to overrule same.
¶35. Preliminarily, neither I nor the Mississippi Legislature can subscribe to Presiding Justice Dickinson’s overarching finding that individuals between eighteen and twenty-one years of age “are immature and ... susceptible to handling firearms unsafely[,]” and his imputation of that dubious hypothesis to Congress.[7] (Dickinson Op. at ¶50). See Miss.Code Ann. § 97-37-13 (Rev.2006) (criminalizes only the sale of pistol cartridges to persons under eighteen years of age). Furthermore, regarding the existence of negligence per se, Justice Kitchens assumes that “[a]s the victim of a violent crime, Williams was within the class of persons sought to be protected” by 18 U.S.C. § 922(b)(1). (Kitchens Op. at ¶ 62). But “the protection [of 18 U.S.C. § 922] was aimed at society in general.” Estate of Pemberton v. John's Sports Center, Inc., 35 Kan.App.2d 809, 135 P.3d 174, 181 (2006). As one court has stated:
[u]nder recent federal cases, a federal court, when determining whether Congress intended to create a private right of action, must look for “ ‘rights-creating language’ ” which “ ‘explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff ” and language identifying “the class for whose especial benefit the statute was enacted.” Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1267 (10th Cir.2004) (quoting Alexander v. Sandoval, 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) and Cannon v. Univ. of Chicago, 441 U.S. 677, 688 n. 9, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).
[[Image here]]
Under the federal standard for determining a private right of action, there is no legislative language in 18 U.S.C. § 922 or the accompanying provisions which can be classified as “rights-creating language” which explicitly conferred a right directly to a class of persons that includes the plaintiffs or language identifying the class for whose especial benefit *122 the statute was enacted. See Boswell, 361 F.3d at 1267.... [T]he legislative history of the ... federal enactments focuses on protecting the public in general from crime and violence created by the ready availability of firearms. While the laws were focused at keeping firearms out of the hands of felons and irresponsible persons, the protection was aimed at society in general.... Based upon the federal private right of action analysis set forth in Boswell, no private right of action would exist under 18 U.S.C. § 922.
Estate of Pemberton, 135 P.3d at 181 (emphasis in original).
¶ 36. Assuming arguendo that negligence per se is established in this case, Justice Kitchens properly acknowledges that “[t]he plaintiff still must prove causation[,]” i.e., proximate or legal cause. (Kitchens Op. at ¶ 60). Yet he problematically contends that “criminal acts with handguns are within the realm of reasonable foreseeability, because the very purpose of the federal legislation applicable to this sale was to curb violent crimes involving firearms.” (Kitchens Op. at ¶ 61). This position is inapposite, as it contravenes the doctrine of stare decisis by avoiding the holding of Robinson[8] that “[t]he criminal act cannot be said to have been within the realm of reasonable fore-
*123 seeability because the defendants, although negligent per se, could reasonably assume that Alexander would obey the criminal law.” Robinson, 372 So.2d at 1076 (emphasis added). See also Permenter v. Milner Chevrolet Co., 229 Miss. 885, 896, 91 So.2d 243, 248 (1956) (citation omitted) (“[i]t is a familiar doctrine that everyone is justified in assuming that everyone else will obey the laws”). Since all have the right to assume that others will obey the criminal laws, “[generally, ‘criminal acts can be intervening causes which break the causal connection with the defendant’s negligent act,’ ” such that the Majority has rightfully concluded that the criminal act at issue, under the circumstances presented, was “not within the realm of reasonable foreseeability[,]” as a matter of law. Double Quick, Inc. v. Moore, 73 So.3d 1162, 1166 (Miss.2011) (King, J.) (quoting O’Cain v. Harvey Freeman & Sons, Inc., 603 So.2d 824, 830 (Miss.1991)). See also Double Quick, Inc. v. Lymas, 50 So.3d 292, 298 (Miss.2010) (Kitchens, J.); Permenter, 91 So.2d at 245 (quoting Anderson v. Theisen, 231 Minn. 369, 372, 43 N.W.2d 272, 274 (1950)) (“As a general rule, a wilful, malicious, or criminal act breaks the chain of causation.”).
¶ 37. Furthermore, I reject the contention that this case does not involve “a superseding,[9] intervening cause.... ” (Dickinson Op. at ¶ 46). Even viewing the evidence “in the light most favorable to” the Plaintiffs, they have failed to establish as a genuine issue of material fact that Walmart’s statutory “violation proximately caused the injury.” Simpson v. Boyd, 880 So.2d 1047, 1053 (Miss.2004). This Court has “repeatedly held” that “if an independent intervening agency was the proximate cause of the injury inflicted, the plaintiff can not recover upon the original act of negligence.” Permenter, 91 So.2d at 252. See also Stewart v. Kroger Grocery, etc., Co., 198 Miss. 371, 378, 21 So.2d 912, 914 (1945) (“if another acting independently ... -wrongfully or negligently puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury the latter is the proximate cause [and] the original negligence is ... remote and, therefore, a nonactionable cause.”). Here, Williams “would not have been injured except for” the subsequent cumulative and “independent action[s] of’: (1) Moore illegally purchasing alcohol, (2) Williams voluntarily approaching Moore’s bedroom and threatening Moore with physical violence, (3) Moore’s defensive reaction thereto, (4) influenced by Moore’s admitted intoxication,[10] (5) followed by Moore’s criminal act of shooting through the door. Bufkin v. Louisville & N.R. Co., 161 Miss. 594, 137 So. 517, 517 (1931). Walmart’s negligence was broken by this series of “efficient intervening cause[s]” which “produce[d] the injury....” Glover ex rel. Glover v. Jackson State Univ., 968 *124 So.2d 1267, 1277 (Miss.2007) (quoting Gulledge v. Shaw, 880 So.2d 288, 293 (Miss.2004)).
¶ 38. So while “[i]t is trae that, except for the negligence of [Walmart], the injury would not have occurred; ... it is also true that, notwithstanding the negligence of [Walmart], the injury would not have occurred except for the independent, intervening[,]” unlawful, and negligent acts of one person (Moore) and the independent threatening acts of another (Williams), see ¶ 37 supra, unrelated and disjointed from Walmart’s conduct, with no injury inflicted by Walmart. Bufkin, 137 So. at 518. See also Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So.2d 34, 36 (1943) (“Negligence which merely furnishes the condition ... upon which the injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof.”); Bufkin, 137 So. at 518 (“A wrongdoer ... is not responsible for what others, acting independently of him, and for themselves, did, even though his act may be the occasion of their act.... [E]ach is responsible for his own act.”) (emphasis added). Viewing the evidence “in the light most favorable to” the Plaintiffs, the combined actions of Moore and Williams were “intervening agenc[ies] which caused the [incident] ... and superseded the original act of negligence of’ Walmart, so as to “insulat[e]” Walmart’s negligence here. Simpson, 880 So.2d at 1050; Permenter, 91 So.2d at 252; Bufkin, 137 So. at 518. Such cumulative, efficient “intervening cause[s]” rendered Walmart’s act so “remote” as to be “a nonactionable cause.” Stewart, 21 So.2d at 914. Thus, there is “no legal connection between the negligence of [Walmart] and [Williams’s] death.” Bufkin, 137 So. at 518.
WALLER, C.J., CARLSON, P.J., LAMAR AND PIERCE, JJ„ JOIN THIS OPINION.

. During the time that the Gun Control Act of 1968 was passed, the same federal government found hundreds of thousands of teenagers mature enough to arm and engage in war, thousands of miles from home (Vietnam War: 1961-1975), yet carved no exception in the Act for them. See 38 U.S.C. § 101(29) (2008). Furthermore, in 1971, only three years after passage of the Act, federal and state legislatures alike found this same group of "minors” mature enough to vote by ratification of the Twenty-Sixth Amendment to the United States Constitution. See U.S. Const, amend. XXVI (right to vote extended to those "eighteen years of age or older”); S.J.R. Res. 7, 92d Congress (1971), H.R.J. Res. 7, 92d Congress (1971) (overwhelming Congressional approval for the amendment) (94-0 in the Senate, 401-19 in the House, and ratified by three-fourths of the states in record time (107 days)).

. Presiding Justice Dickinson contends that ‘‘[t]he case before us today is not even in the same galaxy as Robinson .... ” (Dickinson Op. at ¶ 39). His resort to hyperbole compelled me to examine carefully the validity of his position, which I conclude is not supported by the language in Robinson or Mun-ford, Inc. v. Peterson, 368 So.2d 213 (Miss. 1979). The Robinson and Munford decisions were sound law then, and remain so today.
In Robinson, a twenty-year-old (three months and ten days short of twenty-one) was criminally charged with murder. See Robinson, 372 So.2d at 1074-76. The criminal disposition of the charge is not revealed. See id. Similarly, in the present case, a twenty-year-old minor was criminally charged with murder, but then pleaded guilty to manslaughter. By contrast, Munford involved minors between the ages of thirteen and fifteen, with no reference to "a criminally negligent act,” criminal charges, or a criminal disposition. (Dickinson Op. at ¶ 44). The word ''criminal” is never used in Munford. No support in either cited case can be found for the infusion of "a criminally negligent act” to draw a parallel between Munford and the present case. (Dickinson Op. at ¶ 44).
The federal statute referenced in the wrongful-death complaint in both Robinson and this case was 18 U.S.C. § 922. See Robinson, 372 So.2d at 1074. Conversely, the state statute referenced in the suit in Munford pertained to the sale of alcoholic beverages to individuals under the age of eighteen years old. See Munford, 368 So.2d at 216.
Significantly, the complaint in Munford added that the minors became intoxicated as a result of drinking the beer sold to them, a distinction of great import. See id. at 215. The ingestion of the product produced intoxication which was operative at the time of, and contributed to, the accident, such that the seller's negligence remained actionable. This is a clear distinction from the present case, for purposes of considering the existence, vel non, of superseding, intervening cause(s). See ¶ 37 infra.
Clearly, Munford is distinguishable, while "the same points” from Robinson "arise again in litigation” in the case sub judice. Caves v. Yarbrough, 991 So.2d 142, 150 (Miss. 2008) (quoting Black’s Law Dictionary 1173 (8th ed. 2004)) (Dickinson, J.). Robinson involved a wrongful-death suit brought against a licensed firearms dealer under the very federal statute relied upon in this case (i.e., 18 U.S.C. § 922(b)(1)). See Robinson, 372 So.2d at 1074. The Robinson Court expressly distinguished Munford (only three months after deciding that case) and determined that a subsequent criminal act in Robinson was "an independent intervening agency which superseded the negligence of defendants.” Id. at 1076 (quoting Prosser, Law of Torts 173-74 (4th ed.1971)). This Court unequivocally held that "[t]he criminal act cannot be said to have been within the realm of reasonable foreseeability because the defendants, although negligent per se, could reasonably assume that Alexander would obey the criminal law.” Robinson, 372 So.2d at 1076.

. To "supersede" is to "[o]bliterate, set aside, annul, replace, make void, inefficacious or useless, repeal.” Black's Law Dictionary 1607 (4th ed.1968). To "obliterate” is "1. To eliminate completely so as to leave no trace. 2. To wipe out, wear away, or erase...." Webster's II New College Dictionary 754 (2001). At the time of the accident in Mun-ford, the effect of the alcohol had not worn off or been erased (e.g., testimony that "they were 'feeling no pain’ ”), and remained a contributing factor to the accident. See Munford, 368 So.2d at 218.

. Herein lies the true commonality between Munford and the present case, i.e., a death was caused by an alcohol-impaired minor. The Munford Court eloquently described that "intoxicating liquors impai[r] both vision and judgment[,]" and can "stimulat[e] the baser passions, brea[k] down mental and moral resistance to temptation, and promot[e] immorality.” Munford, 368 So.2d at 217 (quoting Alexander v. Graves, 178 Miss. 583, 173 So. 417 (1937)).