# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2014

Lyle W. Cayce
Clerk

No. 13-60557

JOANNE GLENN, Individually and as Administratrix of the Estate of Christopher Thomas Glenn and Administratrix of the Estate of Bryan Lee Glenn; DANIEL LEE GLENN,

Plaintiffs–Appellants,

v.

IMPERIAL PALACE OF MISSISSIPPI, L.L.C., a Nevada Limited Liability Company; IP HOLDINGS, INCORPORATED, a Nevada Corporation; ENGELSTAD FAMILY FOUNDATION; BOYD GAMING CORPORATION, a Nevada Corporation,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:12-CV-227

Before SMITH, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:*

Daniel Glenn and Joanne Glenn filed suit against the defendants, Imperial Palace of Mississippi, L.L.C., IP Holdings, Inc., Englestad Family Foundation, and Boyd Gaming Corporation. The Glenns alleged, among other

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60557

things, that the defendants' negligence in serving alcohol to their son Bryan and failing to render aid to Bryan at the Imperial Palace Casino Resort and Spa caused Bryan's death from alcohol poisoning. The defendants moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6), and the district court granted the motion. The Glenns appealed. We affirm on all counts.

## FACTS AND PROCEEDINGS

Joanne Glenn, her sons Christopher and Bryan, and their friend Pam Rogers-Seamster travelled to Biloxi, Mississippi to settle a legal claim and search for a place to live. They arrived midday at the Imperial Palace Casino Resort and Spa ("IP" or "the Casino") and the four checked into a single hotel room. The complaint alleges that Bryan Glenn "was impaired by severe physical and psychological injuries," including traumatic brain injury and significant lower back injuries, due to a four-wheeler accident and an automobile accident. Bryan took prescribed medications for pain, agitation and psychosis, severe anxiety, and sleep.

Upon arriving at the Casino, Bryan immediately began playing blackjack and consuming two free drinks at a time, which continued throughout the afternoon and evening. By 5:00 or 5:30 p.m., Bryan was "heavily and visibly intoxicated," was "unable to speak without slurring his words," "could not sit up and was falling out of his chair to the floor, [and was] dropping his money and chips." Joanne, Christopher, and Pam tried to convince Bryan to stop drinking, and repeatedly asked the Casino staff to stop serving Bryan alcohol. They mentioned that he was "on medications and not supposed to drink." They also asked a security guard and the "pit boss" behind the blackjack tables to stop the Casino staff from serving Bryan alcohol, but both said there was nothing they could do.

2

No. 13-60557

The Casino continued serving Bryan two free drinks at a time until 10:00 p.m., when an employee told Bryan that they would no longer serve him alcohol.  Bryan then left the blackjack tables, proceeded to the Casino's "Chill Lounge," and was served more alcoholic drinks there.  After Pam asked the bartender at the Chill Lounge to stop serving Bryan, the bartender stated that Bryan "already had three drinks and he's only been in here 15 minutes.  I can see how intoxicated he is and I'm not going to serve him much more."

At approximately 10:30 or 10:45 p.m., Joanne and Christopher left the Casino to take Bryan's uncle—who was at the Casino for dinner—home.  The trip took approximately two hours, partly because they had to help the uncle— a paraplegic—into bed.  When Joanne and Christopher returned, Bryan was no longer in the Chill Lounge.  Pam asked the doorman where Bryan was, and he explained that security guards had escorted Bryan to his hotel room because he "was just way too intoxicated."  When she asked if the doorman was certain that Bryan had been escorted to the room, the doorman replied, "No, all I know is that he was escorted out of here.  He was just way too intoxicated, he fell out of his chair twice and we can't have that here."

Joanne, Christopher, and Pam went to the room to look for Bryan.  Joanne discovered him lying half on the floor and half in the bathtub, facing the toilet, with his pants around his ankles.  Pam—a trained EMR—then observed that one of the palms of his hands was bluish, realized he was deprived of oxygen, and immediately began performing CPR.  She performed CPR for twenty minutes until the Casino medic arrived, but the medic told her to keep going, since the medic did not have a mouthpiece.  Pam continued giving CPR for another twenty minutes before other medics arrived.  Bryan was taken to the hospital and pronounced dead at 3:19 a.m.  According to an autopsy, he died of "alcohol poisoning combined with his medications."

3

No. 13-60557

Daniel and Joanne Glenn sued the defendants, Imperial Palace of Mississippi, L.L.C., IP Holdings, Inc., Englestad Family Foundation, and Boyd Gaming Corporation (collectively "IP"). The first amended complaint[1] asserted the following claims, individually and on behalf of the estates of their son Bryan and their later-deceased son Christopher: (1) negligence in serving alcohol; (2) negligence in failing to render aid; (3) negligent infliction of mental distress on the estate of Christopher and on Joanne; and (4) breach of fiduciary duty. The Glenns sought compensatory and punitive damages, as well as an accounting, disgorgement, and the imposition of a constructive trust. The defendants filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim, which the district court originally denied. The defendants then filed a motion for reconsideration. After additional briefing, the district court granted the motion for reconsideration, vacated its order denying the motion to dismiss, and dismissed the case under Rule 12(b)(6). The Glenns appealed.

## STANDARD OF REVIEW

This court reviews de novo a district court's dismissal under Rule 12(b)(6), accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs. *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead enough facts to state a claim for relief that is plausible on its face. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiffs plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Our task, then, is to determine whether the plaintiff has

---

[1] The amended complaint was filed on the same day as the original to correct the delineation of certain parties. No substantive changes were made to the facts alleged or the claims asserted.

4

stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. *Id.* (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

In this diversity dispute, Mississippi law governs, and this court reviews a district court's interpretation of state law de novo. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 492 (5th Cir. 2006). "To determine issues of state law, we look to final decisions of the state's highest court, and when there is no ruling by that court, then we have the duty to determine as best we can what the state's highest court would decide." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (internal quotation marks omitted).

## DISCUSSION

### I. Mississippi law prohibits a decedent's estate from recovering in a wrongful death action when decedent's death resulted from his own voluntary intoxication.

The first issue is whether the district court erred in dismissing the Glenns' claim that the defendants negligently served alcohol to Bryan. As with any negligence claim, the Glenns must allege: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) damages; and (4) proximate cause. *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*, 519 So. 2d 413, 416 (Miss. 1988). The Glenns allege that IP—by continuing to serve Bryan after he was visibly intoxicated—violated several criminal statutes and gaming regulations, rendering IP negligent per se. IP counters that Bryan is not within the class of citizens protected by these statutes and regulations, and therefore lacks a cause of action under Mississippi law. In dismissing the Glenns' complaint, the district court explained that the "Mississippi Supreme Court has made clear [in *Bridges v. Park Place Entm't*, 860 So. 2d 811 (Miss. 2003)] that 'the Legislature did not intend to include adults who voluntarily become

intoxicated and subsequently injure themselves as a result of that intoxication as members of the protected class within [§ 67-3-73].'" We agree.

Mississippi common law has long held that there is "no action for damages in the selling or giving away of intoxicating liquors." *Munford, Inc. v. Peterson*, 368 So. 2d 213, 215 (Miss. 1979); *see also Boutwell v. Sullivan*, 469 So. 2d 526, 529 (Miss. 1985) (noting that "neither Mississippi statutes nor the common law impose liability" against hosts who supplied intoxicating liquor to persons who were, or became, intoxicated and subsequently injured third party). "Where there is no statute pertaining to a subject, the common law prevails." *Munford*, 368 So. 2d at 215. The Glenns argue that the common law does not apply because their claims are based on Mississippi statutes and regulations that forbid the sale of alcohol to intoxicated persons. But the mere existence of a statute does not automatically create liability; the would-be plaintiff must be part of the class protected by the statute. "If the statute is not construed to cover the plaintiff, or the particular type of harm, many courts have held that its violation is not even evidence of negligence, and can have no effect on liability at all." *Cuevas v. Royal D'iberville Hotel*, 498 So. 2d 346, 347-48 (1986). Thus, absent a statute that (1) creates damages liability (2) for a class of plaintiffs that includes Bryan Glenn, IP cannot be liable for injuries caused by serving Bryan liquor.

The Supreme Court of Mississippi first allowed damages for sales of alcohol in *Munford, Inc. v. Peterson*. In *Munford*, defendant sold alcohol to a group of underage boys in violation of Mississippi Code Annotated § 67-3-53(b). 368 So. 2d at 214-15. Finding that § 53(b) "was adopted for the protection of the general public, including persons such as" the underage child (Peterson)—who purchased beer and was later killed in an drunken car accident—the court determined that violating § 53(b) constituted negligence per se. *Id.* at 216, 217.

6

This allowed Peterson—as an individual protected under the statute—to recover damages.

The court cabined *Munford* several years later in *Cuevas*. 498 So. 2d 346. In *Cuevas*, a hotel guest became intoxicated at the hotel and fell over a railing. She brought suit under Mississippi Code Annotated § 67-1-83(1), which makes it a crime to sell alcohol to "any person who is visibly intoxicated." *Id.* at 347. While reiterating that *Munford*'s holding that parties protected by the statute—such as third parties injured by intoxicated individuals or first-party minors (in the case of a statute prohibiting sale of alcohol to minors)—fall within the class of citizens protected under such statutes, it adhered to the common law rule by refusing to allow the intoxicated individual *herself* to bring an action for damages against suppliers of alcohol. In reaching this decision, the court found that the legislature did not "intend[] to impose liability upon a dispenser of intoxicants to an adult individual . . . who voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself." *Id.* at 348. The court thus held that the alleged violation of § 67-1-83(1) did not entitle Cuevas to recover because—even if she was visibly intoxicated and served alcohol in violation of the statute—her intoxication was voluntary, placing her outside the class of individuals entitled to recover under § 67-1-83.

In 1987—the year after *Cuevas* was decided—the Mississippi Legislature passed Mississippi Code Annotated § 67-3-73, which provides:

(1) The Mississippi Legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.

(2) Notwithstanding any other law to the contrary, no holder of an alcoholic beverage . . . permit . . . who lawfully sells or serves intoxicating beverages to a person who may lawfully purchase such intoxicating beverages, shall be liable to such

person or to any other person . . . for any injury suffered off the licensed premises . . . because of the intoxication of the person to whom the intoxicating beverages were sold or served. . . .

(4)   The limitation of liability provided by this section shall not apply . . . when it is shown that the person making a purchase of an alcoholic beverage was . . . visibly intoxicated.

In the most recent decision of the Mississippi Supreme Court on this issue, *Bridges v. Park Place Entertainment*, the court considered the interplay between its previous decisions and § 67-3-73.  860 So. 2d 811 (Miss. 2003). After consuming alcohol served to him by a casino, Bridges left the casino with his wife and later tried to escape his wife's car as she was driving.  *Id.* at 812. When Bridges's wife pulled over to the shoulder of the highway, he exited the car, walked onto the highway, was struck by a car, and sustained serious injuries.  *Id.*  Bridges brought suit against the casino, alleging it negligently served him alcohol after he was visibly intoxicated in violation of § 67-1-83(1). *Id.* at 813.  Bridges argued that even if the passage of § 67-3-73 limited the casino's liability, subsection (4) of § 67-3-73 meant that the casino could still be liable since Bridges was visibly intoxicated when served and thus was also in the protected class under § 67-3-73(4).  *Id.* at 815.

The court rejected these arguments, explaining that *Cuevas* held that adults who voluntarily consume alcohol and injure themselves were not in the protected class of § 67-1-83.  As with § 67-1-83, the court did "not perceive the Legislature as having intended to include those same individuals in the same protected class of section 67-3-73."  *Id.* at 816.  It reasoned:

> In adopting Miss. Code Ann. § 67-3-73, the Legislature had the opportunity to clearly state whether adults who voluntarily consume alcoholic beverages and then injure themselves as a result of that intoxication were members of the protected class thus enabling them to bring suit against vendors . . . .  However, the Legislature did not take this opportunity; therefore, this Court's holding in *Cuevas* clearly applies to the present case.

*Id.* Accordingly, the *Bridges* court affirmed the dismissal on the grounds that plaintiff had no cause of action. *Id.* at 818. Because Bryan—like the plaintiffs in *Cuevas* and *Bridges*—became voluntarily intoxicated and injured himself, he does not fall within the class of protected individuals entitled to bring suit against IP for serving a visibly intoxicated individual.

The Glenns challenge the district court's ruling on several grounds. They first assert that because the Casino served Bryan when he was visibly intoxicated, the limitation on liability in § 67-3-73 does not apply. They further argue that *Cuevas* does not apply because it "addressed only MISS. CODE ANN. § 67-1-83 (1982) and whether the Legislature intended by this specific statute to protect adult intoxicants." This is incorrect. *Bridges* unambiguously held that an adult who voluntarily becomes intoxicated and then injures himself because of that intoxication cannot bring a first-party suit, even if the adult was served when visibly intoxicated. 860 So. 2d at 818 ("We find that the Legislature did not intend to include adults who voluntarily become intoxicated and subsequently injure themselves as a result of that intoxication as members of the protected class *within Miss. Code Ann. § 67-3-73.*") (emphasis added).

The *Bridges* court acknowledged that § 67-3-73(2) limits liability in certain circumstances and that § 67-3-73(4) provides that the limitation of liability no longer applies if the person is visibly intoxicated when served. *Id.* at 816. Nonetheless, the court held that because adults who become voluntarily intoxicated are not within the class protected under § 67-3-73, they cannot bring first-party claims under that statute. *Id.* Section 67-3-73(4) removes § 67-3-73(2)'s absolute prohibition against server liability if it can be shown that the intoxicated individual was visibly intoxicated when served. It does not bring the intoxicated individual *himself* within the class protected by the statute.

No. 13-60557

Ultimately, the exact interpretation of these provisions is irrelevant. As the court stated in *Bridges*, "if the vendor sells intoxicating beverages . . . to a person who is visibly intoxicated, that limitation of liability shall no longer apply. *But to whom shall the permit holder be liable?*" 860 So. 2d at 817 (emphasis added). There is no doubt that the permit holder shall not be liable to the intoxicated person himself. *Id.* at 816 ("we do not perceive the Legislature as having intended to include [adults who voluntarily consume alcohol and then injure themselves] in the same protected class of section 67-3-73"). Bryan Glenn was an adult who became voluntarily intoxicated and injured himself because of that intoxication. So even if he was served while visibly intoxicated, he cannot establish negligence per se under § 67-3-73.[2]

The Glenns' second argument is that their claim for injuries sustained on the premises are not foreclosed by *Bridges* because *Bridges* did not address claims for injuries on the premises, and the limitation on liability in § 67-3-73(2) only applies to injuries "off the licensed premises." But the fact that Bryan was injured on the premises does not mean that they can recover. Although *Bridges* involved injuries off the premises, the court never indicated that its holding depended on that fact. Also, *Cuevas*—which involved injuries sustained on the premises—was reaffirmed as "sound law" in *Bridges*, despite the passage of § 67-3-73. *Id.* at 818. While § 67-3-73(2) only limits liability when injuries are "suffered off the licensed premises," the Glenns still face two other obstacles to recovery: (1) § 67-3-73(1) provides that consuming alcohol

---

[2] Some examples of how these sections interact may be beneficial. If A gets drunk at B's establishment—but does not appear intoxicated—and then smashes C's car, B is not liable for that damage. § 72(2). But if A gets drunk at B's establishment and *is* visibly intoxicated, C may be able to bring suit against B. § 72(4). Because § 67-3-73(1) makes it clear that the proximate cause of any damage A inflicts upon himself or others is *his own consumption*—not B's service—there is no scenario in which A may recover from B. This interpretation brings the statute in full accord with the Supreme Court of Mississippi's decision in *Bridges*.

rather than furnishing alcohol is the proximate cause of injuries inflicted by the intoxicated person on himself, and (2) the Mississippi common law rule is that non-statute-based claims based on the negligent service of alcohol cannot succeed. *See Cuevas*, 498 So. 2d at 348. The Glenns cannot recover simply because Bryan was injured on the premises.

The Glenns further contend that they can recover based on the Casino's violation of (1) a Mississippi Gaming Regulation, which allows disciplinary action against casinos serving alcohol to visibly intoxicated persons, and (2) Mississippi Code Annotated § 67-1-83(1), which prohibits the provision of alcohol to habitual drinkers and users of narcotics. MISS. CODE ANN. § 67-1-83(1); MISS. ADMIN. CODE 13-3:1.2. This argument also misses the mark.

Under Mississippi law, the violation of a regulation can constitute negligence per se. *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 796 (Miss. 1995). The Mississippi Gaming Regulations provide:

> The [Mississippi Gaming] Commission deems any activity on the part of any licensee . . . that is inimical to the public health, safety, morals, good order and general welfare . . . to be an unsuitable method of operation and shall be grounds for disciplinary action by the Commission . . . . [T]he following acts . . . may be determined to be unsuitable methods of operation: . . .
>
> (c)  Complimentary service of intoxicating beverage in the casino area to persons who are visibly intoxicated[.]

MISS. ADMIN. CODE 13-3:1.2.

But the Glenns have cited no Mississippi case holding that a violation of this regulation constitutes negligence per se when the adult voluntarily consumes alcohol and injures himself. Moreover, given that the Mississippi Supreme Court has held that violating a *statute* prohibiting sales to someone who is "visibly intoxicated" does not constitute negligence per se in similar circumstances, *see Cuevas*, 498 So. 2d at 348-49, it is highly doubtful that the

court would reach a different conclusion regarding this regulation, which only provides for possible *disciplinary action* for providing alcohol to a "visibly intoxicated" person.

The Glenns further assert that they can bring a negligence claim based on the Casino's violation of § 67-1-83(1), which also outlaws furnishing alcohol "to any person who is known to habitually drink alcohol beverages to excess, or to any person who is known to be an habitual user of narcotics or other habit-forming drugs." MISS. CODE ANN. § 67-1-83(1). But the complaint does not allege facts putting the Casino on notice that Bryan was a habitual drinker or user of narcotics. At most, the Casino had notice Bryan was "on a lot of medication and not supposed to drink." The Glenns also fail to allege facts establishing that Bryan's consumption of alcohol was not voluntary. The complaint indicates that drinks were brought to Bryan or ordered by Bryan, and that Bryan drank them without being forced to do so.[3]

The Glenns final claim—reckless service of alcohol—also fails, as they cite no Mississippi case permitting a cause of action for the reckless service of alcohol. Just as here, the plaintiff in *Bridges* made allegations of intentional, willful, wanton, and reckless conduct in hopes of recovering punitive damages. Yet the court in *Bridges* affirmed dismissal for failure to state a claim. 860 So. 2d at 812. Thus, under Mississippi law, the Glenns cannot recover for the reckless service of alcohol. Accordingly, they have not stated a claim based on the negligent or reckless service of alcohol. The district court did not err in dismissing these claims.

---

[3] *See Estate of White v. Rainbow Casino-Vicksburg P'ship*, 910 So. 2d 713, 717-18 (Miss. Ct. App. 2005) (holding that consumption of alcohol was voluntary when the plaintiff "was served [alcoholic] beverages by the [casino] staff a minimum of six times," since there was "no indication that [the plaintiff] consumed the beverages either under duress, or involuntarily").

## II.   The district court correctly granted IP's motion to dismiss the Glenns' failure to render aid claim.

The Glenns argue that the district court erred in dismissing their claim that IP negligently failed to render aid to Bryan.  They allege that IP failed to render aid at two points in the evening: (1) when the Casino staff removed him from the Casino and placed him alone in his room; and (2) when they failed to respond adequately once alerted that Bryan was unconscious in his hotel.  The Glenns allege that IP's duty to help Bryan independently arose under § 314A (Special Relations Giving Rise to Duty to Aid or Protect), § 322 (Duty to Aid Another Harmed by Actor's Conduct), and § 324 (Duty of One Who Takes Charge of Another Who Is Helpless) of the Second Restatement of Torts.

### A.   Restatement § 314A (Special Relations Giving Rise to Duty to Aid or Protect).

The Glenns' first argument is that "because a special relationship existed between the Casino and the decedent, the Casino had a duty to render aid to the decedent when it became apparent that he was in need of help."  IP's asserted special relationship is based upon § 314A of the Second Restatement of Torts, which provides:

(1)   A common carrier is under a duty to its passengers to take reasonable action

  (a)   to protect them against unreasonable risk of physical harm, and

  (b)   to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2)   An innkeeper is under a similar duty to his guests.

(3)   A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4)   One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to

deprive the other of his normal opportunities for protection
is under a similar duty to the other.

It is worth noting at the outset that the extent to which Mississippi has adopted § 314A of the Second Restatement of Torts is unclear.  In *White v. Rainbow Casino Vicksburg Partnership, L.P.,* the Mississippi Court of Appeals stated that "[a]s of this date, Mississippi has not adopted Section 314A of the Restatement of Torts, Second."  910 So. 2d 713, 719 (Miss. Ct. App. 2005).  But three years later, the Mississippi Supreme Court compared Mississippi tort law favorably to § 314A.  After first acknowledging that there is "scant Mississippi law discussing a proprietor's duty to render aid to one injured on his premise," *Spotlite Skating Rink, Inc. v. Barnes*, the court recounted the requirements of § 314A and noted that § 314A's "standard of care is consistent with this Court's holding" in a previous case.  988 So. 2d 364, 369 (Miss. 2008).  So while the Supreme Court of Mississippi may not have explicitly adopted § 314A, Mississippi premises liability law seems to track that provision and Mississippi would very likely apply § 314A in determining IP's duty to render aid.

The Glenns allege that IP was negligent in its 314A duty in two instances: (1) when it continued to serve him alcohol and failed to call a medic before taking Bryan to his room; and (2) when it failed to provide timely medical care once it realized he was ill.  The pleadings are insufficient to sustain either claim.

Section 314A required IP to provide "first aid after it kn[e]w or ha[d] reason to know that [Bryan was] ill or injured, and to care for [him] until [he] can be cared for by others."  Because there is no allegation that IP knew Bryan was "ill," IP's alleged duty to provide aid was never triggered.  While IP certainly knew Bryan was heavily intoxicated, intoxication alone does not constitute an "injury" or "illness" under § 314A.  Ruling that § 314A's "illness"

requirement includes voluntary intoxication would require alcohol vendors to call for medical assistance anytime a patron is visibly intoxicated. Such a rule would eviscerate the Mississippi Supreme Court's clear statement in *Cuevas* that "we do not think the legislature intended to impose liability upon a dispenser of intoxicants to an adult individual . . . who voluntarily consumes intoxicants and then, by reason of his inebriated condition, injures himself." 498 So. 2d at 348. Because mere intoxication does not constitute "illness" under § 314A, IP had no duty to provide aid to Bryan.

The Glenns' second argument—that IP was negligent once it learned of Bryan's illness in the room—also fails. There is no doubt that—because Bryan was an invitee—IP had a duty to render aid once it knew he was sick. But whether IP's medic arrived within a reasonable time or not is ultimately irrelevant to the inquiry, as the Glenns cannot establish causation. In *Grisham*, the Supreme Court of Mississippi found that—even though the defendants breached their affirmative duty to aid plaintiff once they learned that she had been injured on their premises—the plaintiff "made absolutely no showing that this omission on the part of the V.F.W. resulted in any aggravation of her injuries. Therefore, she has failed to show any damages arising from the breach." 519 So. 2d at 417. The Glenns' complaint states that Pam—a certified EMR—began performing CPR on Bryan immediately upon discovering him in the room and continued performing CPR until the ambulance arrived. IP's medic would have done nothing different had she arrived earlier, which is clear from the fact that she did nothing different after arriving. Because the Glenns cannot establish that IP's allegedly unreasonable response time contributed to Bryan's death, the district court's dismissal of that claim is affirmed.

## B.    Restatement § 322 (Duty to Aid Another Harmed by Actor's Conduct).

The Glenns' second argument is that "the Casino had a duty to render aid to the decedent because its conduct"—serving Bryan alcohol—"contributed to his peril," regardless of whether that conduct was "innocent or in breach of some other duty underlying fault." IP's purported duty is based upon § 322 of the Second Restatement of Torts, which states:

> If the actor knows or has reason to know that by his conduct, whether tortious or innocent, he has caused such bodily harm to another as to make him helpless and in danger of further harm, the actor is under a duty to exercise reasonable care to prevent such further harm.

The use of this section to find IP liable appears to be foreclosed by the statutory sections discussed earlier. Unlike § 314A and § 324, § 322 requires that IP's actions caused Bryan's harm. Under Mississippi law, the proximate cause of bodily harm resulting from intoxication is the consumption—not the provision or sale—of alcohol. Bryan's consumption—not any action by IP—caused his harm. IP therefore had no duty, and no liability, under § 322.

## C.    Restatement § 324 (Negligent Rescue).

The Glenns' final theory of recovery asserts that IP is liable for "assum[ing] control of a helpless Bryan and help[ing] him to his room, where he was left alone" and eventually died. Restatement § 324 states that:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
>
> (a)    the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
>
> (b)    the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

Whatever the merit of this contention, the Glenns' amended complaint does not contain a claim of negligent rescue; that allegation was raised for the first time, briefly, in the Glenns' response to IP's motion to dismiss. There is nothing in the record to indicate that the district court construed this new theory of recovery as an amendment to the complaint and the Glenns did not argue in that court or on appeal that it should have done so. "It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument." *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008). The Glenns' negligent rescue claim is not properly before us and thus we need not address it. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999) ("The Court will not allow a party to raise an issue for the first time on appeal merely because a party believes that he might prevail if given the opportunity to try a case again on a different theory.") (internal quotation marks and citation omitted).

### III. The district court correctly granted IP's motion to dismiss the Glenns' negligent infliction of emotional distress claims.

The only remaining claims that the Glenns argue should not have been dismissed are counts three and four of the complaint—negligent infliction of emotional distress on the estate of Christopher and on Joanne because they suffered harm from having to witness Bryan's death. Both parties agree that these claims are derivative of the negligence claims based on service of alcohol and failure to render aid, and cannot succeed unless there is an underlying, legally cognizable tort. Because the Glenns' underlying claims fail, the district court did not err in dismissing the derivative negligent infliction of emotional distress claims.

### CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.